(26 Civ. Proc. R. 132; 19 Misc. Rep. 248.)

## PEOPLE v. LOEW et al.

(Supreme Court, Special Term, New York County.   December, 1896.)

1. INSURANCE—PERSONS NOT AUTHORIZED TO INSURE—ACTION BY ATTORNEY GENERAL.
    Code Civ. Proc. § 1948, providing for an action by the attorney general, in
    the name of the people, against persons exercising "any corporate rights,
    privileges or franchises" not granted by law, authorizes an action against in-
    dividuals doing business as fire underwriters (Lloyds), on the ground that
    Laws 1892, c. 690, art. 3, impliedly provides for the transaction of such busi-
    ness by corporations only.

2. SAME—RIGHT TO REGULATE.
    The privilege of doing business as insurer is a franchise, subject to legislative
    regulation; and therefore the power of the state to confine such privilege to
    corporations is not lost by permitting for a time insurance by private persons.

3. PLEADING—COMPLAINT—SURPLUSAGE.
    An allegation in the complaint that an action by the attorney general in the
    name of the people is on information of the insurance commissioner may be
    rejected as surplusage, where the attorney general has power to bring the
    action on his own information.

Action by the people of the state of New York against Edward V.
Loew and others.   Defendants move to dismiss the complaint.   De-
nied.

Theodore E. Hancock, Atty. Gen., and Eugene Lamb Richards,
Jr., for plaintiff.

Eliot Norton, Eugene Van Schaick, and Joseph H. Choate, for
defendants.

RUSSELL, J.   At the opening of the trial of this action, the de-
fendants moved for a dismissal of the complaint upon the record,
upon the ground that the action is not maintainable, and that no
right has been conferred upon the law officer of the state to main-
tain an action in the name of the people for the purposes contem-
plated by this proceeding.   The complainant charges that the de-
fendants, 17 in number, are exercising franchises and privileges
not allowed by law.   The defendants are associated together for
the purposes of effecting insurances under the name of the People's
Fire Lloyds of New York City, and, as such, solicit and transact
the business of insurance with only an individual responsibility
for losses, and that to an extent carefully guarded and limited in
amount and terms by the provisions of their policies.   As the deci-
sion in this action may be a precedent for the determination of many
more cases, it has been deemed advisable to take the motion to dis-
miss under consideration, upon printed briefs submitted, in addition
to the oral argument upon the trial.

The attorney general seeks to maintain his action under the pro-
visions of section 1948 et seq. of the Code of Civil Procedure.   Sec-
tion 1948 allows the attorney general to maintain an action upon
his own information, or on the complaint of a private person, against
a person unlawfully claiming an office, an officer who has forfeited
his office, or "against one or more persons who act as a corporation,
within the state, without being duly incorporated; or exercise
within the state any corporate rights, privileges or franchises, not

granted to them by the law of the state." The defendants contend that this section only allows a contest over unlawful claims to corporate rights, corporate privileges, or corporate franchises. If the position of the defendants' counsel be correct, there is no method of preventing private persons from transacting the business of insurance, except by the imposition of the $500 fine imposed by section 53 of the insurance law (chapter 690, Laws 1892). In the codification of the insurance laws of the state, in 1892, a general prohibition was enacted against any person or association doing insurance business in the state, except through corporations or persons possessed of the capital required, and under regulations established by law; but a reservation from the effect of these general provisions was made by section 57 as to the individuals or associations known as "Lloyds," or individual underwriters, which on the 1st day of October, 1892, were lawfully engaged in the business of insurance. Laws 1892, c. 690, § 54. As the business of insuring lives, property, credits, and fidelity of conduct has become of such large public concern, in connection with the business enterprises and activities of the people of the state generally, such business has essentially become one of a public character; and it has been found necessary by the legislature to guard and protect the people of the state in their dealings with the persons and corporations assuming to act as insurance companies, in the same manner that it has been found essential to deal with the business of banking. The state has now for many years had a governmental department devoted to that purpose, and has placed upon the superintendent or head of that department responsible duties in regard to the supervision of domestic and foreign companies doing business within the state. It has thus been held repeatedly that the state has the right to regard the business of insurance as one dependent upon the exercise of a franchise which the state has the right to give and to withhold. This franchise right has grown up from a small beginning from necessity, but is not a departure from the general rule characterizing the meaning of the term "franchise." It is simply a modern application of the principle governing such privileges, applied to new emergencies. Whatever is of large public concern, so that a want of regulation and control will injuriously affect the public in its general interests, may be the subject of a franchise.

The contention of the defendants, therefore, that the declaration of the act of 1892 forbidding unauthorized persons to exercise the privilege of insurance, with a reservation of its effect upon the Lloyds companies, was the first creation of an insurance franchise, and that, therefore, the people may not maintain this action to determine that the defendants had no right to exercise the insurance franchise, cannot be successfully maintained. From the original grasp by the legislature of the subject of insurance business,—the framing of regulations upon the subject,—the privilege of insurance became a franchise; and the sufferance of insurance by private persons till 1892 did not establish the sacredness of that form of action as a personal right. The power, therefore, to regulate, even to the extent of prohibition, the business of insurance, by acts of the

legislature, does not depend exclusively upon the right of the legis-
lature to subject corporations, as such, to statutory control, but
extends beyond to the transaction of business recognized as such,
to be within the discretionary control of legislative action.    Com.
v. Vrooman, 164 Pa. St. 306, 30 Atl. 217; State v. Ackerman, 51
Ohio St. 163, 37 N. E. 828; Thompson v. People, 23 Wend. 547; Uni-
versity v. People, 99 U. S. 309.    The situation, therefore, is this:
Upon a matter of public interest and of public regulation, the legis-
lature has provided the only methods by which persons or associa-
tions may transact business; and the consequences of a breach of
the statutory regulations provided, or the conduct of the business
without the governmental supervision or the regulation afforded
by the state, is deemed so serious as to call for the necessity of def-
inite statutory enactments, with the expense and maintenance of a
large department of the government of the state; and yet it is
earnestly claimed that there is no method known by which the state
can see that its regulations are enforced, and its prohibition of un-
lawful business maintained, against those seeking to defy its au-
thority.

   Section 1948 of the Code of Civil Procedure, by which and through
which the attorney general acts on behalf of the state in maintaining
actions to prevent the unlawful transaction of business regulated by
the state, is somewhat doubtful in its construction.    It is a section
which was incorporated into the Code, upon the abolition of the
former writ of quo warranto, to serve in the place and stead of that
writ.    People v. Hall, 80 N. Y. 117; People v. Thacher, 55 N. Y. 528.
It becomes essential, therefore, in the construction of this section,
conferring the right of action upon the attorney general in lieu of
the writ of quo warranto, to go back to the common law as to what
a writ of quo warranto was, and what its jurisdiction and foundation.
We are so generally accustomed to view a writ of quo warranto as
effective only in cases of intrusion into public office, or action as a cor-
poration without proper formation as such, that we associate the
term with proceedings designed for such purposes.    Its original
scope, however, was broader.    It was a writ of right, maintainable in
the name of the king, against any person who claimed or usurped any
office, franchise, or liberty, to inquire by what authority he made his
claim, and to determine its right.    2 Chit. Prac. 367; Finch, Law,
322; 2 Co. Inst. 282.    It was applied to the exercise of a franchise
relating to land, and judgment might be given ousting the claimant
of such franchise.    Co. Entries, 27B; Jacob, Law Dict. tit. "Quo
Warranto."    The foundation of the writ was, therefore, to give a com-
mon-law right of determination in every case where a franchise was
unlawfully asserted and used.    Thompson v. People, 23 Wend. 537.
If, therefore, the provisions of the Code of Civil Procedure are a sub-
stitute for the writ which it abolished, jurisdiction was designed to
be co-extensive, and would apply to a case where a number of indi-
viduals claimed to exercise a franchise, which is the subject of gift,
withholding, or sufferance by the state.    This is undoubtedly so, un-
less the terms of section 1948 clearly limit the scope of the common-
law writ.    Such inference would not be made from the natural dis-

position of the courts, which broadens jurisdiction to give all possible redress, instead of narrowing even those afforded by the common-law process.     Subdivision 3 of section 1948 allows the attorney general's action against one or more persons who act as a corporation within the state without being duly incorporated, or, secondly, exercise within the state any corporate rights, privileges, or franchises not granted to them by the laws of the state.     It may be said that anybody in the state who exercises any corporate rights necessarily acts as a corporation, and therefore comes within the jurisdiction of the first branch of subdivision 3, and that the second branch of that subdivision must necessarily refer to persons who do not act under the assumption of corporate rights, which would include private individuals acting presumably as such; and such construction would therefore be given to the addition of the words "privileges or franchises" as to include those not acting for corporate purposes, which construction could easily be made by the division created by the insertion of a semicolon after the words "corporate rights" in the section.

There is another view which seems to me to be of serious force. The defendants, while claiming not to be a corporation, or to exercise corporate rights, still insist that they have the lawful franchise, privilege, or right, by whatever name it may be called, to carry on the business of insurance, with a limited personal liability, and that only to the extent of the sums advanced or pledged as indemnity to the insured.     Thus, while they disclaim the name of corporation, they insist upon the substance of its power.     They have the advantages of combined and associated enterprise, with limited liability, distinguishing features of corporate rights, privileges, or franchises.     By section 54 of the insurance law, referred to, the legislature has forbidden private persons, partnerships, or associations to engage in the business of insurance unless possessed of capital required of corporations, and invested in the same manner, nor unless securities are deposited with the insurance superintendent of the same amount required of an insurance corporation, nor unless that officer shall have granted them a certificate that they have complied with all the provisions of law which an insurance corporation doing business in this state is required to observe, and that the business of insurance may be safely intrusted to them.     What is the exercise of business, carried on and secured and superintended and governed by the state precisely as with corporations, but the exercise of corporate rights, privileges, and franchises, within the meaning of the statutory law, whose general theory is that all of this business shall be conducted by corporations, and, if not in name by them, in substance in the same way as the business is carried on by them.     And, as a large amount of insurance business is transacted through corporations by statutory authority, is not the exercise of that privilege, by like statutory authority, by a combination or association of persons, with limited personal liability, a franchise pertaining to a corporation, but yet one which, in certain instances, may be exercised without the completion of corporation identity?     Viewing, therefore, one part of the statutory law as being in harmony with the symmetry of the whole; the prohibition against

private associations from transacting business seriously affecting public interest, and which is generally exercised through corporations, unless in case of compliance with the same requirements as those enjoined upon completed corporations; the provisions of section 1948 of the Code of Civil Procedure making a clear distinction between persons acting as a corporation without being duly incorporated and those who (without acting as a corporation) exercised corporate rights, privileges, or franchises not granted to them by the law of the state,—I am inclined to believe that the prohibition against unlawful insurance action is not without remedial action to enforce it, and, therefore, that this action may be maintained if the issue of fact yet to be tried is sustained by proper proof offered by the attorney general.

The objection that the attorney general has inserted in the complaint that the action was brought upon a complaint and information of the superintendent of insurance is not of force on this motion. It is a question as to whether that objection can be taken otherwise than by preliminary motion before answer; but, whether this is so or not, the Code authorizes the attorney general to bring an action upon his own information or the complaint of a private person, the latter provision being essential only to add authority to this officer to act upon the complaint of a private person in addition to his general power to act of his own volition upon information conveyed to him from official or other sources. The insertion in the complaint of the allusion to the information of the superintendent of insurance was entirely unnecessary, and does not limit the power of the attorney general, who could have brought this action without such information.

The motion to dismiss the action is therefore denied, and the cause will proceed to trial.