WEED and others, Appellants, vs. BERGH, Commissioner of Banking, and another, Respondents.

*January 15—February 1, 1910.*

(1–4) *Banks and banking: Regulation: Requiring banks to be incorporated: Constitutional law: Deprivation of property: Due process of law.*    (5) *Statutes: Enactment: Alteration before approval.*

1. Banking is a common-law right pertaining equally to every member of the community, and cannot be prohibited under a constitution like that of Wisconsin, which recognizes the right and authorizes the legislature to regulate and supervise it.
2. Under the constitution of Wisconsin banking may be regulated so far as may be reasonably necessary to secure the public welfare and safety, but it must be true regulation, not prohibition under the guise of regulation.

3. Sec. 2024—78*m*, Stats. (Laws of 1909, ch. 285), making it unlawful for any person, copartnership, association, or corporation to do a banking business without being incorporated as a bank,—it being possible for three adult residents of the state so to incorporate at any time,—is not a prohibition, but is a valid regulation, of banking.

4. Ch. 285, Laws of 1909, giving to existing private banks but three months after its publication to become corporate banks, is not shown, with respect to the plaintiffs in this case, to necessitate any sacrifice or loss of property such as might render the act void under constitutional guaranties.

5. Where, as it passed the legislature, an act contained a proviso in one part of a section, but before approving it the governor changed the position of such proviso, not in any way altering its effect, such change, even if unauthorized, did not invalidate the statute.

APPEAL from an order of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action in equity brought by a private banking partnership against the banking commissioner and the district attorney of Waupaca county to restrain those officials from enforcing ch. 285, Laws of 1909, requiring all private banking concerns to incorporate, on the ground that the law is unconstitutional. The plaintiffs appeal from an order sustaining a general demurrer to the complaint.

By the complaint it is alleged that the plaintiffs are copartners and have been such for many years, engaged in the lumber, farming, and milling business at Weyauwega, Wisconsin, and since 1870 have also been doing a banking business at Weyauwega, consisting of receiving deposits, discounting and negotiating notes, buying and selling exchange, etc.; that in 1873 they organized a corporation with a capital stock of $30,000, called the Weed & Gumaer Manufacturing Company, to carry on their general business, which corporation keeps separate books of account and has assets consisting of unincumbered real estate, mills, and other property in and about Weyauwega worth $160,000; that the copartnership has now on deposit with it, as private bankers, upwards of $250,000, and has loaned out over $200,000 on first-class se-

curities, many of which will not come due till after September 1, 1909; that they passed successfully through the panics of 1893 and 1907 and have the confidence and respect of the community; that the defendant *Bergh* as state banking commissioner, and the defendant *Severson* as district attorney, threaten that unless the plaintiffs incorporate or go out of the banking business they will cause criminal warrants to be issued and prosecute the plaintiffs under ch. 285, Laws of 1909; that in order to comply with that law it would be necessary for plaintiffs to incorporate in a sum in excess of $150,000 or to immediately convert their real estate and chattel holdings into personal property, and that to attempt such a thing would result in forced sales at inadequate prices, confiscation of their property, destruction of their business, and irreparable damage; that the law violates the following provisions of the constitution of Wisconsin, viz.:

Art. I, sec. 1: "All men are born equally free and independent and have certain inherent rights; among these are life, liberty, and the pursuit of happiness."

Art. I, sec. 8: "No person shall be held to answer for a criminal offense without due process of law."

Art. I, sec. 13: "The property of no person shall be taken for public use without just compensation therefor."

Art. I, sec. 22: "The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality and virtue, and by frequent recurrence to fundamental principles."

—that the law also violates the XIVth amendment to the constitution of the United States, which inhibits any state from depriving any person of life, liberty, or property without due process of law, and from denying to any person the equal protection of the laws.

For the appellant there was a brief by *Kronshage, McGovern, Goff, Fritz & Hannan* and *Byron B. Park,* and oral argument by *Mr. Guy D. Goff* and *Mr. Park.*

For the respondent there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, and oral argument by *Mr. Jackson.*

The following opinion was filed February 1, 1910:

WINSLOW, C. J.    Ch. 285 of the Laws of 1909 adds three
sections to the general banking laws of the state, numbered,
respectively, 2024—78*l*, 2024—78*m*, 2024—78*n*.    The first
of these sections provides that "the soliciting, receiving, or
accepting of money or its equivalent on deposit as a regular
business by any person, copartnership, association, or corpora-
tion, shall be deemed to be doing a banking business, whether
such deposit is made subject to check or is evidenced by a cer-
tificate of deposit, a pass book, a note, a receipt, or other writ-
ing, provided that nothing herein shall apply to or include
money left with an agent, pending investment in real estate or
securities for or on account of his principal."    The second of
the sections named makes it unlawful for any person, copart-
nership, association, or corporation to do a banking business
without being incorporated as either a national, state, mutual
savings, or trust company bank, and makes a violation of the
provision a misdemeanor punishable by fine or imprisonment,
or both.    The third of the sections provides that any person,
copartnership, association, or corporation doing business in
the state as defined in the act may incorporate as a state bank
on or before September 1, 1909, as provided in sec. 2024—55
of the Statutes.    The act was approved June 3, 1909, and
published on the following day.

The general banking law of the state (sec. 2015 to
sec. 2024—81, Stats.: Supp. 1906) was passed as ch. 234,
Laws of 1903, and was amended by ch. 109, Laws of 1905;
and these laws, as well as the amendment now under consider-
ation, were passed supposedly pursuant to the terms of the
amendment to sec. 4, art. XI, of the constitution adopted at
the general election of 1902, authorizing the legislature, by
two-thirds vote of the members elect of each house, to enact
a general banking law "for the creation of banks and for the
regulation and supervision of the banking business."

The plaintiffs claim that the act of 1909 is unconstitutional on two general grounds: *first,* because every citizen has a common-law right to transact a banking business, and the law in question amounts to a prohibition of that right; *second,* because the law in question fixes so short a time within which the plaintiffs must convert their private institution into an incorporated institution that it cannot be obeyed without a ruinous sacrifice of property amounting to practical confiscation.

1. There are some fundamental propositions so well settled that it is only necessary to state them. Among these are the following: *first,* banking is a common-law right pertaining equally to every member of the community; *second,* being a common-law right, it cannot be prohibited under a constitution like ours, which recognizes the right and grants power to the legislature to regulate and supervise it; *third,* under such a constitution as ours, banking may be regulated so far as may be reasonably necessary to secure the public welfare and safety, but it must be true regulation, not prohibition under the guise of regulation. 1 Morse, Banks & Banking (4th ed.) § 13.

With these principles in mind, it seems evident that the ultimate question under this head is whether the requirement that all who wish to enter into the business should incorporate is in fact regulation or prohibition masquerading as regulation. The question is not whether it be the wisest form of regulation, or whether it be a form which commends itself to the judgment as ideal, but whether it be in fact a *bona fide* form of regulation with some reasonable adaptation to meet and overcome any evils or dangers to the public which may lurk in unrestrained exercise of banking rights by individuals. We think it is. If it should be granted that individual bankers may be successfully subjected to all the provisions as to visitation, inspection, examination, and the making of reports to the same extent as corporations, it still must be conceded

that there are at least two well-defined dangers to the public which are and must be present in private banking which are eliminated in corporate banking. The first of these is the danger that the private banker, by engaging in outside business ventures, may subject his banking assets to the claims of business creditors, and thus greatly prejudice, if not destroy, the remedies of bank depositors; and the second is the danger and inconvenience which is likely to result when a private banker dies and the business has to be temporarily suspended for the purpose of probating the estate, involving perhaps destruction of public confidence and a run on the institution.

Both of these dangers are quite real and serious, and both are quite effectually eliminated in the case of a corporation whose business enterprises are strictly limited to banking, and which does not die. It will not avail to say that possibly remedies might be devised to meet these inherent dangers arising in individual banking by other forms of regulation, though we are inclined to think that this would be very difficult of accomplishment without overstepping some of the constitutional guaranties of rights to the citizens. If, as matter of fact, the requirement of incorporation is a form of regulation reasonably calculated to meet and remedy these difficulties, though not in the wisest way, it must be sustained as an exercise of the police power. We have been referred to but one case which holds the contrary doctrine, viz., *State v. Scougal,* 3 S. Dak. 55, 51 N. W. 858, which indeed holds that an act requiring incorporation as a condition of doing banking is unconstitutional. The discussion of the question there is long and learned, but not convincing to us. It is to be noted, further, that the constitution of South Dakota contains an unusual provision which figures largely in the result. This provision is to the effect that no law shall grant to any citizen, class of citizens, or corporations privileges or immunities which on the same terms shall not equally belong to all citizens or corporations. The weight of decision as well as text-

book authority is the other way, however.    1 Morse, Banks &
Banking (4th ed.) § 13; 5 Cyc. 433; Boone, Banking, § 10;
State v. Woodmansee, 1 N. Dak. 246, 46 N. W. 971; Myers
v. Manhattan Bank, 20 Ohio, 283.

The objection that the law ·absolutely prohibits an individ-
ual banker from doing business and hence cannot be consid-
ered as valid regulation is plausible but not convincing.
Many police regulations have the effect of prohibiting a busi-
ness unless certain conditions are first complied with.    The
legislature says, If you wish to engage in this quasi-public
business of banking, you must first secure a corporate charter.
It does not say, You cannot go into it, but, You must go into
it in a certain way which is deemed the safest for the public.
The obtaining of a bank charter is made by the act practically
a matter of course.    Three adult residents of the state may
at any time associate together, execute the required articles
and file them, and the corporation is formed.    The danger
that any citizen who wishes to go into the banking business
will be unable to find two other adult residents who will be
willing to join in executing the written articles of incorpora-
tion is so small as to be negligible.    People can do banking
as before, except that they must do it by means of a corporate
organization.    This is regulation, not prohibition.    Comm.
v. Vrooman, 164 Pa. St. 306, 30 Atl. 217; People v. Loew,
19 Misc. 248, 44 N. Y. Supp. 42.

The scope of the act under consideration, and the question
as to the kinds of business which it covers, are considered in
the case of MacLaren v. State, post, p. 577, 124 N. W. 667.
As the act, under any possible construction, unquestionably
applies to the business transacted by the appellants, it becomes
unnecessary to consider in this opinion what other business
operations it may cover.

2. The act gives but three months in which to convert a
private bank into a corporate bank, and the complaint alleges
that the plaintiffs will be obliged either to incorporate in a

sum exceeding $150,000 as a capitalization or immediately convert their real estate and chattels into money at forced sales which would entail great loss and practical confiscation. The complaint alleges that the deposits of the bank aggregate $250,000 and the loans and discounts on first-class securities, including loans to the Weed & Gumaer Manufacturing Company corporation, exceed $200,000. The amount of cash and other assets is not stated.

In villages having less than 1,500 inhabitants (of which class Weyauwega is one) the capital stock of a bank is not required to be more than $10,000. Sec. 2024—6, Stats. (Supp. 1906; Laws of 1905, ch. 109, sec. 1). The allegation that in order to incorporate under the law the plaintiffs will be obliged to capitalize at $150,000 or dispose of their real property apparently has no foundation, unless it means that as private bankers they have loaned to their corporation so large a sum that under the provisions of sec. 2024—32, Stats. (Supp. 1906; Laws of 1905, ch. 109, sec. 3), they must have a capitalization of that amount in order that the loans to a single corporation will not exceed that fraction of the capital stock which that section prescribes, viz., thirty per cent. of capital and surplus or fifty per cent. in case such percentage is approved by a two-thirds vote of the directors. If this be the case, still we fail to see how the sacrifice of the plaintiffs' property is necessitated. According to the complaint the corporation has $160,000 worth of unincumbered real and personal property. It goes without saying that loans on this property can be readily obtained at reasonable rates of interest on long or short time, as the plaintiffs may desire, which would enable them to reduce their bank loans to any figure which may seem best. All the time necessary to convert their property into money at the most favorable prices may thus be obtained.

A minor objection is made to the act, in this: that it is alleged that the proviso appearing at the end of the first

section of the act as printed appeared in the first line of the
section after the words "to read" when the act went to the
governor for his approval, and was·changed to the end of the
section by the governor before approval.   Referring to the
Senate Journal for 1909, pp. 793, 852, 863, it appears that
the bill as introduced in the senate lacked the proviso, but that
it was amended in the senate by adding at the end of sec. 1
the proviso, and as so amended was concurred in by the as-
sembly.   Sec. 1 of the bill does not end with the words "to
read," but rather with the word "statutes" at the end of
sec. 2024—78*n,* a position where it would be exactly as ap-
propriate and forceful as at the end of sec. 2024—78*l.*   It
further appears (Senate Journal, p. 874) that a resolution
was passed in the senate directing the committee on enrolled
bills to correct the error and place the amendment at the end
of sec. 2024—78*l.*   This resolution, however, does not appear
to have passed the assembly.   In any event it seems imma-
terial.   The bill passed with the proviso in a place where it
would be just as effective as in the place where it appears in
the printed statutes, and the change of position, even if unau-
thorized, cannot be considered as vitiating the legislation.

*By the Court.*—Order affirmed.