STATE EX REL. INTERMOUNTAIN LLOYDS ET AL., RE-
SPONDENTS, *v.* PORTER, STATE AUDITOR, ETC., APPEL-
LANT.

(No. 6,722.)

(Submitted October 6, 1930. Decided November 5, 1930.)

[294 Pac. 363.]

*Mr. Charles E. Pew,* for Relators, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter* and *Mr. T. H. Macdonald,* Assistant Attorneys General, submitted a brief; *Mr. Ketter* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Relators commenced this action in mandamus to compel respondent to issue to Intermountain Lloyds a license to carry on the business of insurance as described in subdivision 1, section 6111, Revised Codes 1921. An alternative writ was issued. Respondent filed a motion to quash the alternative writ upon the ground that the petition fails to state facts sufficient to warrant the relief asked. By agreement, the merits of the case depended upon the sufficiency of the facts set forth in the petition, and the case was submitted for final decision on the motion to quash. The district court granted a peremptory writ and respondent has appealed.

From the petition it appears that Intermountain Lloyds is an unincorporated association of individuals operating an insurance business under the laws of the state of Utah. The plan of operation is as follows: More than 500 individuals have each appointed The Association Underwriters Corpora-

tion, a Utah corporation, their common attorney-in-fact to write insurance for them. Each individual has deposited securities with the insurance commissioner of Utah, approved by him, aggregating in value more than $900,000. The securities deposited by each member represent a value equal to the face or par of the underwriting unit or units subscribed for by such member. In case the securities depreciate in value the commissioner of insurance of Utah may require additional security so that they will be brought up to par. The securities are liable proportionately for all losses on insurance policies. They remain the property of the member depositing them but may not be withdrawn until all liability against them has been discharged. There is no joint liability on the part of the members, but the liability of each is limited by the power of attorney to a separate and several liability and for the proportionate part of the loss sustained under the policies, and there is no personal liability of any member beyond the securities deposited by him and the funds in the hands of the attorney-in-fact belonging to him. The amount of loss chargeable to each member bears the same ratio to the total loss as the amount deposited by him bears to the total deposits. The premiums received by the attorney-in-fact are divided between the attorney-in-fact and the members so that out of the net earnings twenty-five per cent is set aside as a reserve fund for the benefit of the members proportionately, out of which liability on the policies is met before resorting to the deposited securities. Actions on the policies are commenced against, and service of process had upon, the attorney-in-fact without the necessity of joining the individual members.

This class of associations is expressly authorized by Chapter 85, Laws of Utah of 1929. There is no claim that the association has not complied with all of the laws of the state of Utah.

It is alleged in the petition, and conceded for the purposes ██ of this proceeding, that relators have tendered to respondent the proper fees and have done everything required of them in order to have issued to Intermountain Lloyds a

license to transact business in the state of Montana, if it is the character of organization that may be admitted to do an insurance business in this state. The only justification for the refusal of the license is that Intermountain Lloyds, operating under the plan as outlined above, cannot qualify under the laws of this state to do an insurance business. The principal contention is that the association is not possessed of the capital required by section 6149, Revised Codes 1921, which in part provides: "It shall not be lawful for any insurance company, association, or partnership, organized or associated for any of the purposes specified in this chapter, incorporated by or organized under the laws of any other state, or the United States, or any foreign country, directly or indirectly, to take risks or transact any business of insurance in this state, unless possessed of two hundred thousand dollars of actual paid-up capital, exclusive of any assets of any such company as shall be deposited in any other states or territories, or foreign countries, for the special benefit or security of the insured therein."

It should be noted that by the laws of Utah under which this association was organized, the deposits made by the members of such an association are placed on the same basis as the capital of corporations and joint stock companies and subject to the same minimum requirements. (Subd. (d), sec. 3, Chap. 85, Laws of Utah, 1929.)

The word "capital" has been variously defined. Its meaning in any given statute, like that of any other word, "must be controlled by the connection in which it is employed, the evident purpose of the statute and the subject to which it relates." (*Northern Pac. Ry. Co.* v. *Sanders County,* 66 Mont. 608, 214 Pac. 596.) As used in section 6149, supra, when considering the obvious purpose of the statute to afford protection to policy-holders, it relates to the sum which the company, association or partnership dedicates to the business.

In 5 Am. & Eng. Ency. of Law, 2d ed., 134, the word "capital" is said to mean "the sum which a merchant, trader or other person or association adventures in any business re-

quiring the expenditure of money, with a view to profit." The United States supreme court has defined the term as "property taken from other investments or uses and set apart for and invested in the special business." (*Bailey* v. *Clark*, 21 Wall. (U. S.) 284, 22 L. Ed. 651.) Black's Law Dictionary defines "capital" as "the sum of money which a merchant, banker or trader adventures in any undertaking, or which he contributes to the common stock of a partnership."

The securities deposited by the members, as above noted, may not be withdrawn by any of them so long as there exists any outstanding obligation chargeable against them. The securities are thus set aside and dedicated to the business of the association as a final guaranty of the payment of all losses arising under the policies of insurance and constitute the capital. As was said in the case of *Mutual Ins. Co.* v. *Erie,* 4 N. Y. 442: "If the money so paid in as the capital to be employed in conducting the business of the company, cannot be withdrawn and divided among the stockholders or members of the company, it constitutes the capital stock or capital of the company."

But it is contended by respondent that since the securities do not become the property of Intermountain Lloyds but always remain the individual property of the member or underwriter making the deposit, the association is not possessed of the capital required by section 6149. We think, inasmuch as the securities cannot be withdrawn by the member so long as there is any outstanding obligation that may be chargeable against them, and since the securities are irrevocably pledged to satisfy any losses occasioned under the policies of insurance, that the association, as such, is "possessed" of the required capital within the meaning of the statute, even though the legal title to the securities remains in the members. The fact that each member of the association is limited to his proportionate share of the loss only, does not affect the question of the amount of capital possessed by the association.

The insurance commissioner of Utah is chargeable with the responsibility of seeing that the securities of each underwriter are kept up to the deposit value, and to do so he may require additional security. If this is done, and we must assume that it will be, the ratio between the value of the securities deposited by each member to the total value of all deposits remains constant. Since the ratio between the liability of one member and the total liability is fixed and constant, the question of apportioning the loss is one of bookkeeping between the members only and does not in the least impair the security designed by the law to be afforded to the policy-holders. In legal effect, the situation is no different than it would be if each underwriter actually deposited cash in an amount equal to the face or par of the underwriting unit or units subscribed for by him, instead of securities.

Were cash deposited instead of securities, there never could arise a situation whereby the funds of any one underwriter might become exhausted before the exhaustion of the funds of each of the other members. In case the losses were sufficiently great to consume the fund of any one member, they would at the same moment of time exhaust the fund of each of the other members. On the supposition that the insurance commissioner of Utah requires the securities to be maintained at their deposit value, the security of one member could not become exhausted before that of each and every other member, and hence the several and pro rata liability assumed by each, as distinguished from the joint liability of all, does not affect the question of the amount of capital possessed by the association.

Our attention is called to section 6152, Revised Codes 1921, which contains this clause: "the provisions of the foregoing sections relative to foreign companies apply to all companies, associations, or individuals, whether incorporated or not." It is contended by respondent that, since section 6149 is one of the sections referred to in section 6152, it is necessary that each individual be possessed of the minimum capital of $200,000. We think this contention cannot be upheld where,

as here, there is an association of individuals desiring to do business under a common name. If the combined capital of all of them, after excluding what the statute requires, amounts to $200,000, it is sufficient.

It should be noted, however, that under the power of attorney the obligation of the members to replenish the securities is limited to that of making good any depreciation only, and there is no obligation to replace any part of the securities used to pay losses sustained on insurance policies. Hence, it will be seen that if sufficient losses ensue, the capital which is now in excess of $900,000 may at some time be reduced below $200,000. But until that time arrives, if ever, we hold that the association known as the Intermountain Lloyds is possessed of the capital required by section 6149 to entitle it to engage in the insurance business in this state.

Respondent also contends that if Intermountain Lloyds is permitted to do business in Montana, it would be acting in contravention of section 9576, Revised Codes 1921, which authorizes a civil action to be brought "against an association of persons who act as a corporation within this state without being legally incorporated." The following cases are cited as sustaining this view: *State* v. *Ackerman*, 51 Ohio St. 163, 24 L. R. A. 298, 37 N. E. 828, *People* v. *Loew*, 19 Misc. Rep. 248, 44 N. Y. Supp. 42, and *Greene* v. *People*, (Ill.) 21 N. E. 605, adhered to on rehearing in 150 Ill. 513, 37 N. E. 842. But the contention cannot be sustained in this state in view of our statutes. Our statutes regulating the insurance business in this state deal with "corporations;" "associations," "societies," "partnerships" and "individuals." Thus section 6111 provides: "Corporations, associations, and societies, organized to do the following described business, are insurance corporations within the meaning of this Act: * * * Foreign insurance corporations, associations, and societies shall include every insurance corporation, association, and society organized under the laws of the United States of America, or any state or territory of the United States of America other than this, or any other nation, government, or country. Domestic insur-

ance corporations, associations, and societies shall include every insurance corporation, association, and society organized under the laws of this state."

And section 6152 provides: "The provisions of the foregoing sections relative to foreign companies apply to all companies, partnerships, associations, or individuals, whether incorporated or not." And under section 8066, "anyone capable of making a contract may be an insurer, subject to the restrictions imposed by special statutes upon foreign corporations, nonresidents and others." And it has been held that in the absence of any statutory prohibition, or principle of public policy, the citizens of a state have a right, either as individuals, associations or partnerships to engage in the insurance business without being incorporated, and that the citizens of each of the United States are entitled to like privileges and immunities. (*Hoadley* v. *Purifoy,* 107 Ala. 276, 30 L. R. A. 351, 18 South. 220.) In that case it was held that since the laws of Alabama regulating the insurance business had relation to corporations only, and that since citizens of Alabama were free to engage in the insurance business in that state without a license, citizens of New York state operating under the Lloyds plan were entitled to the same privileges.

In *State* v. *Board of Insurance Commrs.,* 37 Fla. 564, 33 L. R. A. 288, 20 South. 772, it was held that the state was without authority, in view of section 2, Article IV of the federal Constitution, to impose greater burdens upon citizens of other states operating under the Lloyds plan of insurance than it imposed upon its own associations or individuals.

It is clear that associations and individuals of this state may engage in the insurance business. The legislature, apparently recognizing this to be so, and to meet the requirements of section 2, Article IV, of the United States Constitution, has expressly given the same right to individuals and associations of another state. (Sec. 6152, supra.)

The individuals comprising Intermountain Lloyds complied with the laws of Utah in perfecting the organization. Whether the result of that organization was to create an association,

or whether it results in individuals operating in concert under a common name, the statutes, section 6111 et seq., constitute the sovereign grant of authority to do business in this state. (*State ex rel. Great Am. Sav. Institution* v. *Lee*, 288 Mo. 679, 233 S. W. 20.) These sections are special statutes conferring the right upon individuals, insurance associations and societies to do business in this state, and they are unaffected by section 9576, which is a general statute. (See *Walden* v. *Bitter Root Irr. Dist.*, 68 Mont. 281, 217 Pac. 646.)

Respondent contends that to allow Intermountain Lloyds to do business in Montana under the plan employed by it is to give it greater rights and privileges than a domestic company, contrary to the provisions of section 11, Article XV of the state Constitution, and contrary to section 6149, which in part provides: "provided, however, that such insurance companies coming within the provisions of this Act shall be subject to all regulations and duties which are now or may be imposed upon insurance companies of like character organized under the laws of this state, and shall have no other or greater powers."

Section 11 of Article XV of the Constitution provides: "No foreign corporation shall do any business in this state without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served. And no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

Specifically it is contended by respondent that, since the entire capital of a domestic insurance company is liable for each and all of the losses incurred by its policy-holders, Intermountain Lloyds, by limiting the liability of each member to the amount deposited by him, proportionately, enjoys greater rights and privileges than a domestic corporation. We see no

merit in this contention. All of the capital possessed by Intermountain Lloyds, if maintained at deposit value, is liable for losses the same as that of a corporation. The fact that liability to policy-holders is several and for a proportionate amount of the loss presents a matter of bookkeeping only. We think individuals in this state may operate an insurance business under the identical plan pursued by Intermountain Lloyds.

If section 11 of Article XV, in either letter or spirit, has application to unincorporated associations and individuals, as well as corporations, its requirements are satisfied by permitting domestic unincorporated associations and individuals to have the same rights and privileges accorded to "the same or similar" foreign unincorporated associations and individuals. Furthermore, while an officer chargeable with the performance of statutory duty may question the constitutionality of the statute, according to some decisions, particularly where he may incur personal liability by executing a void statute (12 C. J. 765), yet it is the rule that where, as here, the claim is that the statute is unconstitutional because discriminatory, only those who are discriminated against will be heard to raise the question. (*Spratt* v. *Helena Power Transmission Co.*, 37 Mont. 60, 94 Pac. 631; 12 C. J. 768.)

Contention is also made that if Intermountain Lloyds violated the laws of this state and incurred the penalty provided for in section 6168, there would be no way of enforcing collection of the penalty. As noted above, Intermountain Lloyds in conducting its business creates a fund made up from premiums paid on insurance policies. We see no reason why payment of a penalty from that fund may not be enforced. Also we think the securities may be resorted to, if necessary to enforce payment of a penalty, at least after losses on all policies of insurance prior to the imposition of the penalty are paid.

Other questions presented have been considered by us and we have found in them no justification for holding that the court erred in granting the writ. The petition for rehearing

is denied. The opinion promulgated herein on November 5, 1930, in which the same conclusion was announced as in this, is hereby withdrawn and this opinion substituted therefor.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICE FORD concur.

ASSOCIATE JUSTICES MATTHEWS and GALEN, being absent, did not hear the argument and take no part in the foregoing decision.

Rehearing denied November 20, 1930.