PIERSON, PLAINTIFF, *v.* HENDRICKSEN ET AL., DEFEND-
ANTS.

(No. 7,383.)

(Submitted November 15, 1934. Decided December 8, 1934.)

[38 Pac. (2d) 991.]

*Mr. T. H. MacDonald,* for Plaintiff, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. C. J. Dous-man,* Assistant Attorney General, *Messrs. King & Rognlien* and *Messrs. Walchli & Korn,* for Defendants, submitted a brief; *Mr. Dean King* and *Mr. Hans Walchli* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Flathead county has a county high school situated at Kalispell, and district high schools at Whitefish, Columbia Falls, and Big Fork. At Somers there is operated, in connection with the grade school and in the grade school building, a two-year high school course. Proceeding under Chapter 47 of the Extraordinary Session of 1933–34, the proper officers therein authorized so to do divided the county into four high school districts. One of such districts embraced forty-one common school districts, including District No. 5 in which the county high school is located, and including Somers School District No. 29, at which the two-year high school course is conducted. The other districts created were the Whitefish High School District, embracing the Whitefish common school district and several adjacent and contiguous common school districts; the Columbia Falls High School District, including the Columbia Falls District and two other contiguous and adjacent common school districts; and the Big Fork High School District, including the Big Fork School District and two other adjacent and contiguous common school districts.

The first-mentioned district thereafter held an election pursuant to the provisions of Chapter 47, supra, and, to effectuate the plan provided in Chapter 24 of the Laws of the Extraordinary Session of 1933–34, and to the Act of Congress of June 16, 1933, known as the National Industrial Recovery Act (48 Stat. 195), for the purpose of submitting the question of issuing bonds to the extent of $158,000 for improving, repairing, and building additions to, and equipping, the county high school at Kalispell. The election carried by a vote of 909 for

the bond issue, and 683 against it. In the Somers school district the vote was 74 for the bond issue, and 41 against it.

This action was brought by plaintiff, resident of and taxpayer in School District No. 29 and of the newly created high school district, to enjoin the issuance and sale of the bonds and to restrain all further proceedings looking to the making of the contemplated improvements. We need not here set forth in detail the allegations contained in the pleadings. Suffice it to say that the essential facts are undisputed. Such additional facts as we deem necessary to advert to will be pointed out in connection with the discussion of the particular legal question to which they are relevant and material.

Plaintiff bases his right to the relief sought upon the alleged invalidity of Chapter 47. The first point raised is that the chapter was not authorized by the Governor's proclamation calling the special session of the legislature which enacted it.

Our Constitution empowers the Governor to call the legislative assembly into special session (sec. 6, Art. V) by proclamation, stating the purpose for which it is convened; but when so convened, "it shall have no power to legislate on any subjects other than those specified in the proclamation, or which may be recommended by the Governor" (sec. 11, Art. VII).

The Governor's proclamation is found on pages 1–3 of the Laws of the 23d Extraordinary Session. It calls attention to the national economic depression; to the Act of Congress affording relief to citizens of a state in case the state provide in part for such relief, and particularly to the National Industrial Recovery Act; to the necessity of immediate legislation to relieve the needy citizens of Montana, and to the need of the state legislation to co-operate with the federal government in its program of national recovery, and, so far as material here, enumerates the purpose of the extra session as follows:

"First. * * * To enact legislation * * * necessary to provide funds for the support and relief of the needy and for their employment; for the financing of direct relief or work relief, or both"; and, second: "To authorize and empower the state, counties, cities, towns, school districts, special improve-

ment districts, or any governmental or political subdivisions or agencies of the state to obtain grants, loans or advances from the United States upon such terms as the President shall prescribe for the construction, repair or improvement of any public works project authorized by the National Industrial Recovery Act, or any similar legislation subsequently enacted by the United States, and to secure the benefits of such Acts; to construct, finance or aid in the construction or financing of such public works project; to borrow money; to issue bonds; to convey land; to sell any real or personal property in connection with any such projects; or to lease any such property from the United States government with or without the privilege of purchase; to enter into any contracts, agreements or arrangements to secure the construction of public works; and to provide for the repayment of any loans made."

Also, the Governor, by special message of December 7, 1933, ██ which must be considered as if specifically stated in the call (*State* v. *Dishman*, 64 Mont. 530, 210 Pac. 604), made the following recommendation to the assembly:

"Consolidation of School Districts. I have been called upon by a committee of the Montana School Boards Association with the urgent request that there be given an opportunity for consideration of a measure designed to materially reduce the cost of education through the elimination of inefficient units of school administration. The committee desires that this Extraordinary Session enact into a law a measure proposed at the Regular Session of this Assembly, this being known as House Substitute for House Bill No. 271, 'providing for consolidation of school districts; providing for transportation; providing for officers and providing certain districts shall not receive aid from the county or state equalization fund.' Impressed by the importance of the request I am hereby submitting the matter to this honorable body for such action as it may deem warranted."

The Act under consideration is entitled: "An Act to Provide Emergency Relief by the Creation of High School Districts in Counties Having County High Schools, and Authorizing

the Boards of Trustees of Said High School Districts to Borrow Money and to Enter Into Contracts and Arrangements for the Repair, Improvement, Equipment, and Construction of Buildings and Public Works, Providing for Elections and Procedure to be Followed by High School Districts.''

Section 1 of the Act prescribes that the board of trustees of any school district maintaining a high school shall be the board of trustees of the respective high school districts established under the Act, and empowers such board of its own motion to embark upon a program of public works in the construction, improvement, repair, and equipment of buildings for the high school or high schools in the district.

Section 2 authorizes the county commissioners and county superintendent of schools, upon request from the board of trustees of any high school, to divide the county into high school districts for the purpose of the Act, the boundaries thereof to be subject to the approval of the state superintendent of public instruction. It specifies the factors to be considered in creating the districts, and provides that no common school districts shall be divided for the purposes of the Act, but that each must be made a part of a high school district in its entirety.

Section 3 empowers the board of trustees to issue and sell bonds on the credit of high school districts.

Section 4 provides that the laws governing the issuance and sale of bonds of school districts, and the levy of taxes for their payment, so far as applicable, shall apply to such bond issues.

Section 5 in effect provides that no existing laws are repealed by the Act, but that by it an additional method of borrowing money for the purposes specified is afforded, and that the Act leaves all existing laws governing the maintenance and operation of high schools in force.

Section 5A makes the Act inapplicable to any high school districts in a county having a population of 45,000 or over, according to the 1930 federal census.

Section 6 makes the Act effective upon its passage and approval.

It is the contention of plaintiff that, since the Governors' proclamation makes no reference to the creation of new high school districts, Chapter 47, authorizing it, is beyond the purposes specified in the call and hence is invalid.

Legislation incidental to or germane to the subjects expressed in the Governor's proclamation must be upheld as within his call. (59 C. J. 528; *State ex rel. Anaconda Copper Min. Co.* v. *Clancy*, 30 Mont. 529, 77 Pac. 312, 314; *State ex rel. Ach* v. *Braden*, 125 Ohio St. 307, 181 N. E. 138.) And it is the rule that the proclamation must be liberally construed, to the end that the legislation enacted pursuant thereto be operative. (*State ex rel. Anaconda Copper Min. Co.* v. *Clancy*, supra.)

The general subject of consolidating school districts was ■ submitted by the message of December 7. It recommended consideration of a particular bill, but such recommendation would not be binding upon the legislative assembly but advisory only. (*In re Governor's Proclamation*, 19 Colo. 333, 35 Pac. 530; 25 R. C. L. 805.) The Governor "cannot submit the draft of a proposed bill, and direct the legislature to enact it, or no measure at all; but any enactment which will meet the ends sought to be accomplished in his call must be deemed to be embraced within the limits of the subjects submitted for consideration." (*State ex rel. Anaconda Copper Min. Co.* v. *Clancy*, supra.) Under the message of December 7, the legislative assembly had the right to pass legislation effecting consolidation of school districts for all purposes. Such consolidations would in effect create new districts. (*Box* v. *Duncan*, ante, p. 216, 38 Pac. (2d) 986.) We see no reason, therefore, why it had not the authority to pass legislation accomplishing a consolidation for a limited purpose, as here, and particularly when that limited purpose aids in accomplishing the main purpose of the call, i. e., to engage in a program of public works in co-operation with the federal government, under the National Recovery Act. (Compare *Devereaux* v. *City of Brownsville*, (C. C.) 29 Fed. 742; *State Road Com.* v. *West Virginia Bridge Com.*, 112 W. Va. 514, 166 S. E. 11;

*Commonwealth* v. *Liveright,* 308 Pa. 35, 161 Atl. 697; *State Note Board* v. *State,* 186 Ark. 605, 54 S. W. (2d) 697.)

A reasonable construction of the gubernatorial proclamation impels the conclusion that the paramount consideration in the mind of the Governor was to aid in the public works program, and in that manner, and to a certain extent, reduce unemployment and distress, and that the identity of the particular governmental agency through which that end was accomplished was of secondary importance. (Compare *Brewer* v. *City of Point Pleasant,* (W. Va.) 172 S. E. 717.) That this is so is evidenced by the language of the proclamation authorizing and empowering certain named governmental agencies, as well as ''any governmental or political subdivisions or agencies of the state,'' to obtain loans, etc. The legislature in carrying out that purpose had the right to legislate on incidental matters, such as creating new school districts by consolidation, and thus bring into being a new governmental agency to carry out the main purpose of the call. Chapter 47 is within the purview of the Governor's proclamation.

It is next contended that Chapter 47 is in conflict with ▆▆▆ section 6, Article XIII, of the Constitution, which limits the indebtedness of a school district to three per cent. of the value of the taxable property therein, because of the possibility of including in the new district a common school district already indebted to such an extent that its proportion of the proposed bond issue, added to its existing indebtedness, would exceed the constitutional limit.

The record discloses without controversy that, if the indebtedness proposed by the bond issue involved here were divided between the various common school districts composing the new district in proportion to the assessed value of the property in such districts and added to the existing indebtedness of each of such common districts respectively, the indebtedness of each would still be less than three per cent. of the assessed value of its taxable property. Assuming, without deciding, that, in determining whether any common school district had exceeded its constitutional limit of indebtedness, the indebted-

ness of the proposed bond issue must be allocated in the manner above stated, it follows that plaintiff and no other individual taxpayer of any of the common school districts here involved and none of the common school districts themselves can raise the question here attempted to be raised, for, as to them, the Act is not open to this objection. Only those adversely affected by an unconstitutional Act can question its validity. (*Shea* v. *North-Butte Min. Co.*, 55 Mont. 522, 179 Pac. 499; *Pohl* v. *Chicago etc. Ry. Co.*, 52 Mont. 572, 160 Pac. 515; *Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495; *State ex rel. Intermountain Lloyds* v. *Porter*, 88 Mont. 347, 294 Pac. 363.)

Plaintiff also contends that Chapter 47 offends against section 11, Article XII, of the Constitution. This section provides that "taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." It is contended that because of the rule announced in the case of *Hamilton* v. *Board of County Commrs.*, 54 Mont. 301, 169 Pac. 729, 730, a tax to meet a bond issue for building additions to a county high school must be levied upon property in the entire county. The *Hamilton Case* is not controlling here. That case dealt with county bonds to the payment of which the full faith and credit of the county as a unit were pledged. The court in that case said: "A bond which imposes an obligation upon a district less than an entire county cannot be denominated a county bond in any proper sense of the term." The bonds issued under Chapter 47 are not county bonds, but under the express provisions of the Act they are issued "on the credit of high school districts." (Sec. 3.) This scheme was evidently devised to overcome some of the inequalities arising under prior laws pointed out in *State ex rel. Henderson* v. *Dawson County*, 87 Mont. 122, 286 Pac. 125.

While it is true that under Chapter 47 the levy of taxes with which to pay the bonds is governed by existing laws (sec. 4), and hence is made by the board of county commissioners

(Chapter 147, Laws of 1927), yet the authority of the board in that connection does not extend beyond the boundaries of the particular district liable for the payment of the bonds. The statute which therefore makes the property throughout the district liable for the tax makes the tax burden coextensive with the territorial limits of the authority levying the tax for the particular purpose within the meaning of section 11 of Article XII. In effect, Chapter 47 accomplishes the same result as the Act upheld in the case of *State ex rel. Henderson* v. *Dawson County,* supra.

Nor is it of controlling importance that the improvements contemplated are to be made on the county high school building, legal title to which is in the county. The county, in the management of the county high school, is simply the agency of the state for that purpose. (*State ex rel. Henderson* v. *Dawson County,* supra.) The beneficial title of the school property is in the state. (*Young* v. *Board of Trustees,* 90 Mont. 576, 4 Pac. (2d) 725.)

The state legislature may create or abolish districts, or change or re-arrange boundaries at will. (*State ex rel. Redman* v. *Meyers,* 65 Mont. 124, 210 Pac. 1064.) It has by Chapter 47 done so with the view of eliminating some of the inequalities pointed out in the *Henderson Case,* and with the view of having the bonds paid by those who obtain the most use of the property benefited by the improvement. We see no constitutional objection to the plan as provided in Chapter 47.

It is contended that, since School District No. 29 was maintaining a two-year high school course, it could not under Chapter 47 be included within a district already having another high school. Conceding, without deciding, that under that chapter it is not proper to include in a single district two school districts in each of which there is already being maintained a high school, the inclusion of District No. 29 in the county high school district would not offend against the provisions of Chapter 47, for the Somers district cannot be considered a high school district. The two-year high school work is there conducted in the grade school buildings and under the

supervision of the same superintendent as the grade school. We think that wherever Chapter 47 refers to high schools, it contemplates a complete high school course, and that there is, therefore, nothing to prevent the consolidation of a school district maintaining only a two-year high school course with another district maintaining a complete high school course.

Some contention is made that the election was not regularly called and held. We have given careful consideration to this contention and find no ground upon which to sustain it.

Other questions raised have been given consideration and we find no merit in any of them.

The relief prayed for is denied and the proceeding dismissed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Stewart and Anderson concur.