MISSOURI, K. & T. RY. CO. OF TEXAS v. ROBERTSON. (No. 1661.)

(Court of Civil Appeals of Texas. Texarkana. Oct. 26, 1916.)

1. RAILROADS ⚫312(3), 313—CROSSING ACCIDENT—FAILURE TO GIVE SIGNAL.

Where a person was thrown from a wagon because, when he approached a crossing, a train standing nearby was started and moved partly over the crossing without giving the statutory signal or ringing the bell, the railroad company was liable; the failure to give the signal under the circumstances being negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 990, 1002; Dec. Dig. ⚫312(3), 313.]

2. RAILROADS ⚫313—SIGNALS—SUBSTITUTED WARNING.

When some other character of warning is relied upon by a railroad as a substitute for the statutory signals, it must appear that the injured party had actual notice of the substituted warning.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1002; Dec. Dig. ⚫313.]

3. RAILROADS ⚫350(29) — CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Where one crossing a set of tracks was suddenly told by a brakeman that a train on another track was to be moved, and was injured by being thrown from his wagon when he attempted to get out of the way, the question of his contributory negligence was for the jury, although if he had remained in the situation he was when warned he would not have been injured, since a person who is injured while acting upon the reasonable appearance of danger and in an effort to extricate himself is protected by the same rules which apply when the danger is real.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1188; Dec. Dig. ⚫350(29).]

4. TRIAL ⚫242—CONFUSING INSTRUCTIONS.

In action for injuries from crossing accident, an instruction that if the jury believed from the evidence that plaintiff was injured as alleged by him in petition and "that the same was the proximate result of the negligence of defendant * * * as alleged * * * in his petition, in either of the manners set out in paragraph 2, 3, 4, or 5," without contributory negligence by plaintiff, then to find for plaintiff, etc., was erroneous as confusing and apt to mislead, since the language used virtually told the jury that if the facts stated in any one of the paragraphs were found by them to be true, this was sufficient proof of negligence by defendant, although the acts and omissions mentioned in detail in paragraphs 4 and 5 were not charged therein to be negligent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 569–576; Dec. Dig. ⚫242.]

5. NEGLIGENCE ⚫141(8) — CONTRIBUTORY NEGLIGENCE—INSTRUCTION.

In action for negligent injuries, an instruction that if the jury believed that plaintiff's injury was the proximate result of his own negligence and not due to the negligence of the defendant to find for defendant, was error as requiring the jury, in order to find for defendant, to find not only plaintiff's contributory negligence, but also absence of any negligence of defendant.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 391; Dec. Dig. ⚫141(8).]

6. TRIAL ⚫256(1)—INSTRUCTIONS.

A party desiring a more explicit or comprehensive presentation of an issue by the court should request it by appropriate instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628, 633; Dec. Dig. ⚫256(1).]

Appeal from District Court, Marion County; J. A. Ward, Judge.

Action by W. D. Robertson against the Missouri, Kansas & Texas Railway Company of Texas. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Schluter & Singleton, of Jefferson, and Chas. C. Huff, of Dallas, for appellant. S. P. Jones and T. P. Harte, of Marshall, for appellee.

HODGES, J. This appeal is from a judgment awarding the appellee $5,000 as damages for personal injuries sustained at a public crossing in the city of Jefferson, Tex. The facts show that the appellee resided in the country, and had gone to Jefferson that day with a wagonload of cotton, which he delivered at a warehouse near the appellant's depot. The depot was located between two streets which crossed the appellant's track at right angles. In going to the warehouse, which was on the east side of the railroad, appellee crossed the tracks north of the depot and turned south. While he was at the warehouse unloading his cotton a freight train came into the station from the north, and in due time openings were made so as to prevent blocking the street crossing; the train being divided into three sections. Appellee saw this train, and knew that it was still there when he left the warehouse. He returned by the same route he traveled in going, and undertook to cross the railroad at the same point north of the depot. A part of his route was parallel with the railroad, and he went on the crossing at an oblique angle. There were several sidetracks at that point, in addition to the main line. While he was attempting to drive his team around a box car standing on the main line, he fell from or was thrown out of his wagon and sustained the injuries for which he sued.

The first error assigned complains of the insufficiency of the evidence to support the verdict. In stating his cause of action the appellee sets out four distinct, and to some extent inconsistent, grounds of negligence.

After proper preliminary averments, he states his cause of action in paragraphs 2, 3, 4, and 5 of his petition. We shall state only the substance of these paragraphs, as follows:

Second. "The street leading from the cotton platform to appellee's home was partially blocked, but a sufficient opening had been left to enable persons to cross. After the cars had been standing for some ten minutes or longer, plaintiff started to drive his team across the track; and after he had driven upon one of the tracks, and while in the act of driving his team across another immediately in front of him, one of the employés of the railway company rushed suddenly from behind some cars and spoke abruptly, frightening the plaintiff's team and causing same to shy and throw the plaintiff from his wagon against one of the cars or some other hard substance."

Third. "When he was driving his team across the tracks, one of the employés of the defendant rushed from behind the cars and ordered the plaintiff to stop. Plaintiff, being in a perilous situation and not being able to tell whether the cars on the main line or one of the side tracks were about to be moved, endeavored to drive across the track, believing that was the safest course to take. The employé spoke in a loud tone of voice while he rushed from behind the car, which frightened the plaintiff's team, causing them to shy and throw him from his wagon."

Fourth. "While plaintiff was passing over the tracks of the defendant railway company, the defendant, its servants and employés in charge of the cars, without giving any warning whatever to the plaintiff, suddenly started the cars in motion, or struck them, making a loud noise, which caused plaintiff's team to become frightened and jump or run, which jerked or threw him from the wagon, inflicting the injuries of which he complains."

Fifth. "When the plaintiff approached the railroad tracks the cars were standing still, and there appeared to be nothing to prevent him from driving across. The employés of the defendant gave no signal or warning of any character that indicated that it was not safe for him to drive across or that there was any intention upon their part to cause the cars to move, until after plaintiff had driven his team upon the tracks and had placed the same in such position that any warning given to him only tended to confuse him. That he was in a position where he could not extricate himself from the dangers in a better way than by endeavoring to drive his team across all of the tracks. That while so doing the persons in charge of the train, without warning, started or struck the same, which caused a loud rattling noise, which frightened the plaintiff's team and caused them to jump or run, by reason of which he was thrown from the wagon and injured."

The appellee testified at length in his own behalf. His account of how the injury occurred is substantially as follows: A train came into the depot after he got to the cottonyard. He took it to be a freight train. This was between 2 and 3 o'clock in the afternoon. There were some wagons ahead of him, and he had to remain some little time before he could unload his cotton. There were three tracks to be crossed—two east of the depot, and one west of the depot. In going out from the platform he drove on the first track; and while his team was within three or four feet of the second track a man appeared and called to him in a loud voice, saying:

"Stop! You are going to be killed! Don't you see that engine coming in there?"

The person seemed to be excited and in a hurry. When he heard that command he stopped his team and looked to see if he could discover the engine. He looked down the track some distance from him and saw the engine, which was emitting smoke or steam. He could not tell which track the engine was on. There were three or four cars on the track on which he had driven. When he discovered the engine in that situation he thought the best thing he could do would be to get off of this track. He knew that if the engine came back on that track it would be bound to hit his wagon, and thought if he could get in between the tracks, and probably cross, that would be the best way out. He says:

"I wanted to move on because I knew I could not stay where I was. I was afraid I would get hurt."

The wagon was then on the east track, and the heads of his horses were on the next track. The first thing that occurred to him was to get off the side track and then get across the other. He then started his team and immediately turned round and called to his son, who was in another wagon following, not to come on to the crossing. At that time the team was moving slowly. He heard a "racket" and felt the team jerk. It was a bumping or knocking noise; he could not tell just what it was; it sounded like the train had started; it was right at his left towards the depot. When this occurred the horses jumped and jerked the wagon a little forward, turned to the right, and threw him out. He was standing up in the wagon at the time because he had no seat. The wagon bed was about a foot or more in depth. Another party, by the name of Bryant Williams, was in the wagon with him. He further testified that the bell was not rung or the whistle blown; that he heard no one warn him not to come on the track, until after he had crossed the first track. At the time the horses jumped he was looking back talking to the man in the next wagon. He states that he does not know definitely what frightened his team—whether it was some man coming from behind a car, or the noise of the train. He denied that the fall was caused by the wheel sliding along the side of the rail. He admitted, however, that the wheel did strike the rail at an oblique angle. He says:

"I could not swear what frightened my team. They shied to the right and cut the wagon, and it just flopped me out of it. I think the wheel struck the rails when they jumped; it was after I started the wagon—after I had stopped when the wagon slided when it struck the rails after I started the second time. I did not see the cars move. I don't know positively what frightened the horses. It was the fuss or something. They did not run away. I had the lines in my hands when I fell."

The testimony of Bryant Williams, a witness for the plaintiff, is, in substance, that he

was in the wagon with Robertson, resting on his knees, with his back towards Robertson, looking in a different direction from that in which the wagon was moving. He saw no one give Robertson any warning or signal to stop. Robertson did not stop his wagon, but kept on moving; and just as the team was going around the end of a car standing on the main line the string of cars was struck by the engine, causing them to move. The horses shied to the right and jerked the wagon. He turned his head just in time to see Robertson as he was falling.

Appellant introduced a considerable amount of testimony, all of which tended to show that the cars were not moved, and that Robertson had been warned not to go on the track. In rebuttal the appellee introduced two witnesses, Jones and Olds, who were present at the time the accident happened.

Jones testified that the train was standing on the main line, and he and others were waiting for it to move; that the train did move before Robertson fell out of the wagon. The brakeman had signaled the engineer to back up, and the train had just started to moving as Robertson was coming on up towards the railroad. The brakeman saw him coming, and "hollowed" to him to stop, but the latter kept on coming. The brakeman then ran to the other side to flag the engineer to stop. The train was moved about 15 feet. It and the wagon met on the crossing just as the train stopped. "The car had a little the edge on the wagon; that is, it had more of the crossing; and the wagon just ran in against the box car, and the tongue hit the box car and the man fell out head foremost." On cross-examination this witness said that Robertson was down in the flat when the brakeman called to him to stop; he had not gotten to the crossing, was some 40 or 50 feet from it. He heard the brakeman say "Stop" twice, but Robertson failed to heed the warning. Robertson was traveling so fast in the wagon the brakeman just had time enough to run back on the other side and flag the engineer. The team did not become frightened; did not offer to move, but stood perfectly still.

Olds testified that he was present at the time, and that the section of the train at the crossing where Robertson fell did not move before the fall occurred. On cross-examination he stated that Robertson was down in the flat, coming up on the incline, when he first saw him, about 20 feet from the track; that Weems, the brakeman, called to him to stop, and waved his hand; that Robertson continued to drive on as if he did not hear him. The brakeman called to him two or three times, but Robertson never stopped until he drove into the car and it knocked him out of the wagon. He struck the end of the car with the wagon tongue. He further stated that Robertson was coming pretty fast, rushing his team, and the brakeman was calling to him all the time to stop.

A careful examination of the statement of facts fails to show any evidence to support the finding that the appellee's team was frightened by an agent or employé of the railroad company suddenly coming from behind the car or yelling to him in a loud voice. While the appellee says that he does not know whether the horses were frightened by the noise of the cars or by some one coming suddenly from behind the car and making a loud noise, there is no affirmative evidence that they were frightened in that manner. That conclusion eliminates from further consideration paragraphs 2 and 3 of the plaintiff's original petition.

[1] We come, then, to the question: Was the evidence sufficient to sustain a finding that the appellee was injured as the proximate result of the acts and omissions set out in paragraphs 4 and 5? The jury was justified in finding that at the time Robertson approached the crossing a train standing near was started and moved partly over the crossing without giving the statutory signal or ringing the bell. The failure to give that signal under the circumstances made a case of negligence per se.

[2, 3] The next question then is: Was that negligence the proximate cause of the injury? The rule seems to be that when some other character of warning is relied on by the railroads as a substitute for the statutory signals, it must appear that the injured party had actual notice of the substituted warning. M., K. & T. Ry. v. Taff, 31 Tex. Civ. App. 657, 74 S. W. 89. In this instance the evidence does not show that the appellee had any actual notice that the train was to be moved till his team had passed over and his wagon was on the first side track. In other words, he was at the time of receiving the notice on the crossing. The jury might have concluded that he was in that situation by reason of the failure of the appellant's employes to ring the bell, and might also have found that Robertson himself was free from negligence in failing to sooner observe the warnings given by the brakeman, who was then trying to attract his attention. It is true the evidence shows that appellee was not at that time in a place of actual danger, and that had he remained in that situation he would not have been injured. But, according to appellee's testimony, he thought he was in a place of danger, and made the effort to cross over to the other side of the remaining tracks in order to escape, believing that was the safest course to pursue. The issue thus presented becomes one of contributory negligence, and the jury had a right to determine whether a reasonably prudent person would, under the circumstances, have concluded that the situation was dangerous. A party who acts upon the appearance of danger and is injured in an effort to extricate himself is pro-

tected by the same rules which apply when the danger is real; provided, of course, there be reasonable grounds to apprehend danger under the existing circumstances. Lodwick Lbr. Co. v. Mounce, 46 Tex. Civ. App. 230, 102 S. W. 142; Williams v. Railway Co., 34 Tex. Civ. App. 145, 78 S. W. 45; I. & G. N. Ry. Co. v. Neff, 87 Tex. 303, 28 S. W. 283. The state of the evidence is such that the jury might have concluded that the appellee acted without sufficient reason to apprehend danger, or that he was guilty of contributory negligence in taking the course that he did under all the circumstances; but we cannot say as a matter of law that such a finding should have been made. We therefore overrule the assignment complaining of the insufficiency of the evidence.

[4] The court gave the following as a part of his general charge:

"Now, therefore, bearing in mind the foregoing instructions, if you believe from a preponderance of the evidence in this case that the plaintiff W. D. Robertson on or about the 16th day of December, 1914, was injured in his person as alleged by him in the petition, and that the same was the proximate result of the negligence of the defendant, its servants or employés, as alleged by the plaintiff in his petition, in either of the manners set out in paragraph 2, 3, 4, or 5, and without any negligence on the part of the plaintiff, then you will find for the plaintiff such damages as you may find from the evidence he has sustained as the proximate result of defendant's negligence, not to exceed the amount sued for."

The appellant complains that this charge is on the weight of the evidence. By the express terms of this charge paragraphs 2, 3, 4, and 5 of the appellee's original petition are in effect made exhibits to be considered by the jury in applying the instruction given. The language "that the same was the proximate result of the negligence of the defendant, etc., as alleged by the plaintiff in his petition, in either of the manners set out in paragraphs 2, 3, 4, or 5," was doubtless understood by the jury to mean the same as if the court had said "that the same was the proximate result of the 'negligent conduct' of the defendant," as set out in paragraphs 2, 3, 4, or 5. This instruction virtually tells the jury that if the facts stated in any one of the paragraphs were found to be true, this was sufficient proof of negligence on the part of the appellant to justify a finding to that effect. Nowhere in paragraphs 4 and 5 is it charged that the acts and omissions mentioned in detail were negligent. It is true that in other portions of the appellee's petition those essential averments are made, but the jury was not in that connection referred to those other portions. Considering the sharp conflict in the evidence, we think it probable that the verdict of the jury was influenced by this instruction, and for that reason we have concluded that the error is of sufficient importance to justify a reversal of the judgment. The charge, considered in the light most favorable to the appellee, was calculated to confuse and mislead the jury.

[5, 6] A third assignment is based upon the failure of the court to give a proper and full charge upon the issue of contributory negligence. In a general way the jury was instructed that a verdict for the plaintiff must rest upon a finding that he was himself not guilty of negligence in bringing about the injury. A special charge on contributory negligence, covering one phase of the defense, was given at the request of the appellant. The court also gave as a part of his general charge the following:

"If you believe from the evidence the plaintiff was injured as alleged by him on the 16th day of December, 1914, but you further believe from the evidence that the same was the proximate result of the plaintiff's own negligence and that the same was not due to the negligence of the defendant, then you will find for the defendant."

This doubtless was intended as a charge favorable to the appellant on contributory negligence. It will be observed, however, that it requires the jury to find not only that the plaintiff was himself guilty of negligence, but that the injury was not due to the negligence of the defendant. This does not submit the issue of contributory negligence. The defense of contributory negligence is made out when it is shown that the negligence of the plaintiff concurred with that of the defendant in bringing about the injury. However, if the appellant desired a more explicit or comprehensive presentation of the issue of contributory negligence, it should have been requested by appropriate instructions.

We venture the foregoing criticism upon that particular charge, in view of the fact that the case is to be tried again. We would also suggest, for the same reason, that in stating the issues the court should avoid submitting those grounds of recovery which are without evidence to sustain them.

For the reasons stated, the judgment is reversed, and the cause remanded.