HARRY A. BROOKS ET AL., APPELLANTS, V. ORA E. ELDER ET AL., APPELLEES.

FILED JUNE 12, 1922. No. 21953.

1.. Injunction: SCHOOL BUILDINGS: USE FOR DANCES. A permanent injunction will not be granted under the evidence in this case to restrain the board of education from allowing and permitting supervised dances in the auditorium of the high school building under the excellent rules adopted by said board and herein set out.

2. Schools and School Buildings: USE OF PROPERTY. The legislature has the power to bestow upon school authorities unlimited control and discretion in the use of school property, within constitutional limitations.

3. ——: ——. The board of education of a city school district may permit the use of public school buildings for public assemblages. In rural school districts a majority of the qualified electors may, at any annual meeting, permit such use and fix the rental therefor as provided in chapter 236, Laws 1915.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*William E. Shuman,* for appellants.

*Evans & Evans, contra.*

Heard before MORRISSEY, C. J., ROSE and ALDRICH, JJ., HOBART and PAINE, District Judges.

PAINE, District Judge.

The plaintiffs and appellants are residents of and taxpayers of the school district of North Platte, and upon January 15, 1921, filed a petition for an injunction against the defendants and appellees, who are the members of the board of education of said school district. The relief sought was a permanent injunction restraining the defendants forever from permitting the high school building, known also as the "Franklin School," or any of the school buildings in said district from being used for dancing. Bond of $500 being approved, the district court upon said date issued a restraining order fixing January 31,

1921, as the time when the defendants were to show cause why a temporary injunction should not be issued. Upon said date oral evidence was introduced by plaintiffs and four affidavits submitted by the defendants, upon which the court directed that the temporary restraining order be dissolved, but, in addition, passed finally upon the case and denied the injunction and dismissed the action at the costs of the plaintiffs. Thereupon the plaintiffs moved the court to vacate the order so made, for the reason that the only question for hearing on said date had been whether a temporary injunction should be issued, and contend that the court was without jurisdiction to hear, try or determine said action upon the merits or to dismiss the same, which motion was overruled and the plaintiffs appealed to this court.

The evidence discloses that, during the voting of bonds for the construction of said building something over 12 years ago, one of the arguments advanced was that said high school building would contain a large assembly room to be used for school and community purposes; that said building had in it a large assembly room or auditorium in size 90 feet by 65 feet which has been used upon over 1,000 nights for every sort of athletic, social, patriotic, and recreational purpose; that among the uses to which it has been put have been lectures, community gatherings, parties, institutes, Twentieth Century Club meetings, school of music, chautauquas, community choruses, minstrel shows, theatrical entertainments, and during the war for every form of patriotic advancement, including its use for several months as a barrack for the company of soldiers raised at North Platte. For each and all of these events, lights and janitor service as well as heat in the winter time were furnished by the taxpayers of the school district; that the board of education received applications from some of the parents to permit supervised dancing to keep their children from attending public dances with their miscellaneous crowds and no supervision, and that vigorous protests came in from other parents who ob-

jected to dancing in any form as a recreation and asked the board to prohibit the same; that long and careful study and discussion was given to the matter by the board during a period of several years, and at last the board decided to permit dancing under three general rules, with minor conditions, as follows:

"1st.  No general policy permitting dancing in the auditorium would be. allowed by the board of education.  2d. No dancing would be permitted at any function attended by all students.  3d.  Dancing would be permitted for one and one-half hours under the following conditions: Written permission must be obtained from the secretary of the board of education.  It must be announced in advance that there would be dancing at the party.  Members of the board of education must be present.  A number of the parents of the children taking part must be present. The welfare board should always be invited.  There must be some program other than dancing to occupy part of the evening."

During the first year after these rules were adopted some three dances were allowed.  The secretary of the board objected strenuously to the use of the word dances, and said that dancing was only a part of the program at the five parties at which it had been allowed in two years, and that she had attended all of the parties and danced at each one.

The superintendent of schools testified that at parties where dancing had been allowed the same decorum had been enforced as in homes when dancing is allowed, and that the majority of the pupils and their parents approved of such parties for the reason that the general public were never admitted.

The president of the board of education admitted the contention of the plaintiffs that parents of children of high school age were caused much worry with their children, and says: "The complaint of the plaintiffs that the permitting of these dances has caused hard feelings and turmoil in the homes of those objecting to dances seems to

this affiant to be a condition unavoidable. This affiant is well aware that there is some mental anxiety for all parents raising families in any community, but he doubts if it has been increased by any of the parties in the Franklin auditorium by reason of dancing." The president continues that there are those who object to dancing as a recreation and there are those who object to every form of amusement or exercise now recognized as regular school functions, such as swimming, football, basketball, cadet military instruction, school band, and gymnastics, and the board of education in dealing with people of every creed, belief and denomination knew of no way of handling any of these problems except by using its own best judgment, and the total hours during which dancing has been permitted under these rules has been six and one-half hours during a period of two years.

With this brief review of the evidence, we will consider the law. We are cited to the case of *Lewis v. Bateman,* 26 Utah, 434, wherein it was held that school trustees have no right to permit schoolhouses to be used for public and private dances, for the reason that trust property built from the taxes of citizens at large can not be used for private purposes. But in the case before us no leasing for private use has been attempted, but the board of education have permitted the use by the pupils under very strict regulations for parties at which dancing was a part of the program.

Our attention is also called to *Spencer v. Joint School District,* 15 Kan. 259, 22 Am. Rep. 268. In a very able opinion by Judge Brewer, afterwards a very worthy member of the United States supreme court, the court restrained school officers from leasing property for gatherings and meetings. He said that it was unnecessary to pursue the discussion further, for it would be simply traveling over a road already well worn and dusty upon the power to use public funds or property for private purposes.

In the half century that has past since this opinion was written by Judge Brewer wonderful changes have been

taking place. The dusty roads of his day are now well oiled for fast flying motor cars, and in a few months patrons will gather nightly in schoolhouses to hear radio programs from far-distant cities. It is urged that our young people are vastly different in this day and should be more restrained, but we venture the opinion that the parents of today are just as different in their home life and personal habits from the parents of 50 years ago as our young people differ from those of that age.

An injunction is hardly a proper remedy to try out the policy of a school board in reference to dancing. However, each of the parties to this suit urges in his brief that this court do not dispose of this case on a technical ruling but discuss the merits of the general question.

This court is not aware of any approved regulations for the control of school dances emanating from any educational body, such as the National Educational Association, and thus each board and faculty is perplexed in the handling of this subject so as to best meet the needs of each locality. Three general plans have grown up in relation thereto: First, in some public schools it is decided that dancing will not be allowed in any way, shape or form. No class or organization within the school may use the school or a class name in advertising any dance which any group of pupils may hold, nor is any teacher allowed to chaperon or attend such dances. The burden is placed entirely upon the parents who permit their children to attend such dances. Second, another group of city public schools teach folk dancing and certain other approved forms of dancing to the girls as a part of their regular gymnasium exercises, but allow no other form of dancing in the schools. Third, in other schools dancing is permitted as a part of the regular supervised social work of the schools, but jazz music is tabooed. In such schools dancing may be allowed upon some Friday afternoons, and parents are invited and the faculty members supervise the entire event; or evening parties may occasionally be given at which school orchestras furnish the music, but the public are never permitted

to take part therein.    Our public school system has been kept fairly free from popular tendencies and collateral purposes and school boards have been rightly held to the strict limitations of the statutes governing their action.    However, the legislature of any state has the power to bestow upon school authorities unlimited control and discretion in the use of school property, within the constitutional limitations.

This case is fully covered by chapter 236, Laws 1915, which reads as follows: "Schoolhouses may be used for public assemblies. The board of education of every school district in which is included any incorporated city or village may in its discretion permit use of public school buildings for public assemblages under such rules and regulations as it may adopt. A majority of the qualified electors at any annual meeting in any rural school district may by resolution permit a similar use of school buildings within such district under rules and regulations which may be adopted at such annual school meeting, or in case none are adopted then under rules and regulations prescribed by the district board. The board of education may exact such rental as may be necessary to meet the expense of such meeting, restore the property, and pay for extra help required. In rural school districts such rental may be fixed by resolution adopted at the annual school meeting, but in default of such provision the district board may fix the rental." If the majority of the taxpayers of Nebraska do not approve this law, then the appeal should be made to the legislature and not to the courts.

Our attention is called in appellees' brief to a California case decided in 1918 and, which is the latest case to which our attention has been called. In this case of *McClure v. Board of Education,* 38 Cal. App. 500, an injunction was sought against the social dance, and we quote from that case as follows: "The question here is, manifestly, one of power and not of policy. * * * There is some intimation that a moral question is involved herein. Of course, the board of education should not tolerate an indecent or im-

moral use of the schoolhouse, but it cannot be said that they contemplate anything of the kind. It is clear that there is a difference of opinion among well-informed people as to the moral effect of dancing. 'There are many excellent, intelligent, and pious people who are opposed to modern social dancing as being fraught with harm to the participants and to the community.' "

In some communties there are a larger number of equally good people who dance and teach their children to dance and who crave for their young children the protection of carefully supervised school dances. Shall such a demand be met at the expense of the taxpayers of a school district? Schools have installed chemical, physical, electrical, botanical, and biological laboratories, as well as meeting the demand for manual training in carpentry and blacksmithing. Domestic science and sewing classes render efficient service in making homebuilders of our girls. Million-dollar public school buildings with great auditoriums and expensive stage apparatus have been constructed. The most complete gymnasiums with shower baths and swimming pools and highly paid men and women instructors are found in many cities. Athletic parks with amphitheaters of large seating capacity bring and accomodate the crowds which attend foot ball and other games. Yet some parents can be found who object to each and all of these things. In spite of this the public schools have constantly grown in power and influence in both city and country and have, in many instances, become the one great community center for wholesome entertainment of all. During the past year the city of North Platte has enrolled one out of every ten of its inhabitants in its night schools, where gray-haired men attended classes with children in their teens. Meeting the demands of its community is the burden placed upon school officers. One of these demands of recent years is for supervised dancing to which parents, who desire it, may send their children. This demand arose at North Platte, the board of education considered it carefully for several years and finally

decided to grant the use of the Franklin building under rules herein set out, which are not open to criticism and which meet the hearty approval of the parents of the children attending.

The action of the district court was right and it is

AFFIRMED.