YOUNG, APPELLANT, v. BOARD OF TRUSTEES OF BROAD-WATER COUNTY HIGH SCHOOL ET AL., RESPONDENTS.

(No. 6,827.)

(Submitted October 10, 1931. Decided November 4, 1931.)

[4 Pac. (2d) 725.]

578

[redacted]

*Messrs. Kanouse & Schmitz,* for Appellant, submitted an original and a supplemental brief; *Mr. Fred W. Schmitz* argued the cause orally.

*Mr. Frank T. Hooks,* County Attorney of Boardwater County, for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Myrtle E. Young filed complaint in the district court of Broadwater county, praying that the board of trustees of the Broadwater county high school be enjoined from permitting the use of the high school gymnasium for dances not connected with high school activities. On this complaint the court issued an order requiring the board to show cause why an injunction should not issue, to which the board responded by motion to quash, and, after hearing had, the motion was sustained and judgment of dismissal entered. Plaintiff has appealed from the judgment.

The complaint alleges that plaintiff is a taxpayer and the owner of the Townsend Auditorium, which she maintains for rent for public dances, and that the board, vested only with enumerated powers, has "used and permitted to be used" the high school gymnasium, erected and maintained for school purposes, with funds derived from taxation, for public dances, in direct competition with plaintiff's business, in violation of her constitutional rights and in contravention of law, and that such dances, having no connection with school activities or educational or public purposes, are, and the use of the building is, against the public policy of the state.

While the complaint alleges that the board both "used" and permitted the gymnasium "to be used" in the manner described, from the briefs and argument it is clear that what was done was that, from time to time, the board rented the gymnasium to individuals for the purpose of giving public dances, and the matter of the sufficiency of the complaint was submitted to the trial court, and here, on the theory that such renting is not within the power of the board.

Chapter 101 of the Revised Codes of 1921 provides for the organization, control, and management of county high schools, and section 1271 of these Codes, contained in the Chapter, defines the powers and duties of the board of trustees. This section originally contained eight subdivisions; but it was

amended in 1929, clearly for the sole purpose of adding subdivision 9, which reads as follows: "The board of trustees shall have power * * * to rent, lease and hire such halls, gymnasiums and buildings and portions of buildings as may be suitable for public entertainments to such persons, associations or corporations as the board may deem proper and to collect from such persons * * * such charges as may be fixed by the Board and deposit such rent with the County Treasurer to the credit of the High School district." (Chap. 48, Laws of 1929.)

As evidencing the legislative intent and progressive thought on the subject, the foregoing section was amended by the next legislative assembly by eliminating all restrictions and permitting the board to "rent, lease or let" the described property to any "person or entities the board may deem proper" for any purpose and for such time and rental as the board may designate. (Sec. 83, subd. 12, Chap. 148, Laws of 1931.)

As the case was tried in 1930, the statute before amendment is controlling here and the authority of the board is restricted to renting for "public entertainments." The first question raised is as to the power of the board, under this statute, to rent the gymnasium to persons giving public dances.

"Entertainment" is defined, in part, as "that which serves for amusement," and among the definitions of "amusement" is found "a pleasurable occupation of the senses, or that which furnishes it, as dancing, sports or music." (Webster's Dictionary.) "Recreational activities," within the meaning of the California law making schoolhouses civic centers, includes dancing. (*McClure* v. *Board of Education*, 38 Cal. App. 500, 176 Pac. 711.) A public dance is, therefore, a "public entertainment." (*Commonwealth* v. *Quinn*, 164 Mass. 11, 40 N. E. 1043.)

"The meaning of a given term employed in a statute must be measured and controlled by the connection in which it is employed, the evident purpose of the statute, and the subject to which it relates." (*Northern Pac. Ry. Co.* v. *Sanders*

*County,* 66 Mont. 608, 214 Pac. 596, 598; *State ex rel. Intermountain Lloyds* v. *Porter,* 88 Mont. 347, 294 Pac. 363.)

Here, public dances come within the letter of the statute, but do they come within the purpose and intent of the legislature?

The county board is vested with broad discretion in exercising statutory powers (*Brown* v. *Bailey,* 238 Ky. 287, 37 S. W. (2d) 58; *Purcell* v. *Woodward,* 75 Ind. App. 380, 130 N. E. 660), and this rule must be presumed to have been known by the legislature when it enacted the statute under consideration. Had that body desired to restrict the power to the renting of public school buildings for public entertainments of an educational nature, it would have found suitable words in which to express such restriction.

Cases have been cited denying this right to school boards as a general principle and under divergent statutes, none of which are persuasive, as the right depends entirely upon statutory authority. However, the case of *Lewis* v. *Bateman,* 26 Utah, 434, 73 Pac. 509, 510, cited, is based upon a statute which authorizes school trustees to permit a schoolhouse, when not occupied for school purposes, to be used for any purpose which will not interfere with the seating or other furniture. As it was admitted that, in order to hold dances in the schoolhouse, it became necessary to remove the seats, fastened to the floor, and other furniture, the case was decided when the court found that such letting was in direct contravention of the statute. The court, however, proceeded to declare that such private use was unauthorized and contrary to the public policy, and opposed to the principle that the sovereignty cannot tax its citizens for private purposes, cannot raise money by taxation for the purpose of erecting a dance-hall, and "it necessarily follows that a board" has no right to "convert a public school building into a public and private dance-hall."

If the reasons given for this *dictum* are sound, the legislature cannot authorize the board to rent a school building for hire for any purpose; yet a letting for all manner of "assemblages" is upheld by the courts (*Brooks* v. *Elder,* 108 Neb. 761, 189 S. W. 284; *Harmon* v. *Driggers,* 116 S. C. 238, 107 S. E. 923),

and a continuous renting of school halls as lodge rooms of secret societies is held proper, so long as such renting or lease does not interfere with school work or injure the building. (*Cost* v. *Shinault*, 113 Ark. 19, Ann. Cas. 1916C, 483, 166 S. W. 740; *Lagow* v. *Hill*, 238 Ill. 428, 87 N. E. 369, affirming 143 Ill. App. 523.)

The beneficial title to property owned by a school district is in the state, the district holding merely as agent of the state, and therefore the state has full control of school district property. (23 Cal. Jur. 50.) It follows that the legislature, the mouthpiece of the state, may authorize its agents to do anything that is not prohibited by the Constitution of the state.

The statute under consideration but provides a means by which high school trustees may relieve, to some extent, the burden of taxation for school purposes resting upon the people of the state. This might not be done were it not for the fact that the Constitution imposes upon the legislature the duty to provide "by taxation, or otherwise," sufficient means in connection with the amount received from the general school fund, for the maintenance of "a public, free common school in each organized district in the state." (Sec. 6, Art. XI.)

A county high school comes within the definition given in the constitutional provision just cited. (*State ex rel. Henderson* v. *Dawson County*, 87 Mont. 122, 286 Pac. 125.) Thus the legislature has clothed the board with authority to provide for the maintenance of the school, in part, by means other than taxation, and the granting of the authority is within the constitutional power of the legislature.

As to the statute being contrary to the public policy of the state, such policy is determined by the enactments of the legislature, and, in their absence, by the decisions of the courts (*Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878), and it is not the function of the supreme court to declare what is the public policy of the state respecting matters upon which the legislature has spoken. (*State ex rel. Rankin* v. *Harrington*, 68 Mont. 1, 217 Pac. 681.)

Public dances, both within and without incorporated cities and towns, are recognized by our legislature as proper forms of public entertainment, subject only to reasonable regulation. (Sec. 11039, Rev. Codes 1921; Chap. 131, Laws of 1929; Chap. 49, Laws of 1927.) It cannot, therefore, be said that in this state, the renting of school property for such dances is contrary to public policy.

Finally it is urged that the statute violates the constitutional rights of plaintiff, in that it permits a branch of the state government to enter into unfair competition with a citizen who pays taxes on property used and must employ private funds for its maintenance and, consequently, cannot compete with those in charge of tax-exempt property kept up at public expense. Plaintiff therefore contends that the statute is violative of section 3, Article III, of our Constitution, which reads: "All persons are born equally free, and have certain natural, essential, and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties, of acquiring, possessing, and protecting property, and of seeking and obtaining their safety and happiness in all lawful ways."

While this section prohibits the enactment of a law which would impair vested rights (*Hinds* v. *Wilcox*, 22 Mont. 4, 55 Pac. 355), it does not insure to a person, first in the field, a monopoly in any line of business. In support of her contention, plaintiff relies principally upon the decision in *Sugar* v. *City of Monroe*, 108 La. 677, 59 L. R. A. 723, 32 South. 961, 963, where it is held that, under its charter, the city of Monroe was not authorized to engage in the business of conducting a theater, and is then declared that "it is manifestly unjust for it to do so in competition with a taxpayer from whom it exacts a license which it does not itself pay," and that, the taxpayers having voted funds to build a schoolhouse, it would constitute a breach of trust to convert it into a theater or to use it for the purpose of giving theatrical performances as a business. The court, however, declared: "In expressing this conclusion, we do not wish to be understood as going to the extreme of holding that the city authorities may not make such casual and

incidental use of the building in question, not inconsistent with or prejudicial to the main purpose for which it was erected, as they may deem advisable, nor as holding that changed conditions in the future may not justify them in devoting it to some other purpose," and approved the declaration in *Worden* v. *New Bedford*, 131 Mass. 23, 41 Am. Rep. 185, that: "The city could not erect buildings for business or speculative purposes, but having a city hall, built in good faith and used for municipal purposes, it has the right to allow it to be used incidentally for other purposes, either gratuitously or for a compensation. Such a use is within its legal authority, and is common in most of our cities and towns."

The fact, then, that the court referred to unjust competition, had nothing to do with the court's decision and, standing alone, would not have compelled the decision rendered.

With the policy, expediency, wisdom, or justness of a legislative enactment this court has nothing to say. (*State ex rel. Goodman* v. *Stewart*, 57 Mont. 144, 187 Pac. 641; *Hill* v. *Rae*, 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826; *State ex rel. Board of County Commrs.* v. *District Court*, 62 Mont. 275, 204 Pac. 600.)

Undoubtedly the leasing of school halls to secret societies as lodge rooms, shown above to be valid, deprives owners of other halls of renters, to their detriment. The maintenance of school cafeterias, held to be within the power of school boards (*Bozeman* v. *Marrow*, (Tex. Civ. App.) 34 S. W. (2d) 654; *Ralph* v. *School Board*, 158 La. 659, 104 South. 490), interferes with the business of restaurants in the vicinity, as does the sale of school supplies to students at cost (*Cook* v. *Chamberlain*, 199 Wis. 42, 225 N. W. 141) interfere with, and constitute competition which cannot be met by, book stores. The operation of school busses may detract largely from the receipts of bus lines, operating under license over the same route.

The fact that the school gymnasium, when not required for school purposes, is rented for profit to those licensed under the Acts above referred to, to give public dances, does not injure

plaintiff's business of renting her hall any more than does the renting of the gymnasium to basket-ball teams desiring to give an exhibition game for profit.

The business or commercial aspect of the power granted the board, here presented, might well be urged before a legislative assembly having such an Act under consideration, but cannot be considered by this court in order to defeat the will of the legislature. (*Trumper* v. *School District,* 55 Mont. 90, 173 Pac. 946.)

The court did not err in sustaining the motion to quash or in entering the judgment of dismissal. Affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied November 6, 1931.