HANSEN et al. v. BOARD OF EDUCATION OF EMERY COUNTY SCHOOL DIST. et al.

No. 6313.   Decided September 16, 1941.   (116 P. 2d 936.)

See 56 C. J. Schools and School Districts, sec. 203; 24 R. C. L. 573 (7 Perm. Supp. p. 5469).

*Henry Ruggeri,* of Price, for appellants.

*F. W. Keller* and *T. N. Jensen,* both of Price, for respondents.

MOFFAT, Chief Justice.

Respondents, plaintiffs in the District Court, applied to the trial court by petition for an alternative writ of mandamus and prohibition, in pursuance of which the Board of Education of Emery County School District, and the members thereof, appellants, were required to appear and show cause why they should not be prohibited from closing and discontinuing the school at the town of Elmo and why they should not be required to provide for the continuation and maintenance of the school theretofore maintained and operated for the school children and inhabitants residing in and about the town. The matter was submitted to the District Court upon demurrer. The writ was made permanent. The cause is before this court on appeal.

The demurrer admits all the facts properly pleaded. ■
*Higgings* v. *Glenn,* 65 Utah 406, 237 P. 513.

The question here is, whether the facts pleaded and admitted are sufficient to entitle the plaintiff (herein plaintiffs and respondents are referred to as the plaintiff and defendants and appellants are referred to as defendant) to the writ issued by the trial court. Neither ■■ this court nor the district court may by mandamus

or prohibition control or direct the discretion of an inferior tribunal, if the law has properly vested discretion in the matter in such tribunal. Where the question presented turns upon the admitted facts by demurrer, in the district court, and the only question is whether upon such facts the judgment of the district court properly applied the law to the admitted facts, this court must accept those facts as admitted. *Ketchum Coal Co.* v. *Christensen, Dist. Judge, et al.,* 48 Utah 214, 159 P. 541.

The statement of facts is lengthy and difficult to condense. Plaintiff has accepted defendant's statement of facts in summary of the facts presented by the petition and answer and the issues raised by the demurrers thereto.

In substance, the facts alleged are:

The Board of Education of Emery County School District is a body corporate. The individuals named as defendant are members of the board. The territorial boundaries of the school district are coextensive with the boundaries of Emery County. The school district is divided into five representative districts, one of which embraces Elmo Town with a population of about 194 persons which when added to the population, contiguous thereto, and dependent upon the town school numbers 471 persons among which is a school population of about 85 children, not including high school pupils. Since about 1910 a grade school has been operated and maintained in Elmo Town, for the education of persons eligible to attend the primary and grammar grades.

On the 9th day of April, 1940, Emery County School District owned and still owns a four-room brick school building at Elmo, of modern design, with all necessary furniture and equipment, available, ready, and adequate as a primary and grammar school building for Elmo and the territory adjacent thereto. Funds for the support and maintenance of the school of Elmo are available. On April 9, 1940, the School Board adopted a resolution to the effect that upon the closing of the 1939-1940 school year the school at Elmo would be discontinued and abolished; and for succeeding

years all students eligible to attend the primary and grammar grades would be transported to the Town of Cleveland to another school within the district 4.1 miles distant from Elmo, there to attend school. The Board intends to permanently discontinue the Elmo school and will do so unless restrained by the order of the court. Plaintiffs were present at the meeting of the Board when the resolution to abolish and discontinue the school at Elmo was adopted and opposed the action and demanded the continued maintenance and operation of the primary and grade school in the Town of Elmo.

In order to get the whole picture, we state the substance of the other facts alleged:

The establishment and maintenance of the Elmo School has been one of the inducements for plaintiff and other residents of the Town and adjacent area to so establish residence. Ever since the establishment, and until its discontinuance the school was an institution for the social, intellectual and moral betterment not only of the pupils attending, but for the members of the community. In reliance on the continued existence of the school the community including plaintiff have expended large sums in the building of homes; the reclamation and development of farms and have incurred public debt to provide a culinary water system. The discontinuance of the school will greatly depreciate the value of the homes and farms and impair their ability to pay their public debt.

The removal from and discontinuance of the public school in the community will render the place less desirable for homes, and the population will diminish in numbers. The residents who may remain will be deprived of the social, moral and intellectual advantages theretofore existing.

The action of the defendants will cause children of tender age of the community to be absent from the care and control of their parents from 8 to 10 hours each school day. Children will be deprived of an opportunity to have on school days their noonday meal at home with their parents.

The travel by motor vehicle over a distance of from 10 to 25 miles on each school day will subject the children to hazards of such travel over partly developed roads. Illness will result from riding in school busses. Anxiety and worry will be imposed upon parents and guardians of the children as to their safety and welfare. Community activities have centered about the school at Elmo; amateur dramatic production, musicales and recitals in which parents and pupils have participated and attended promote the educational and social uplift and civic interests of the community. Plaintiff and other residents who have depended upon the school at Elmo are unable to maintain a private school for the education of their children. Elmo Town has not had the amusement opportunities common to larger communities. The school has been the principal social, cultural and entertainment center. The discontinuing of the school was without the consent, and over the united opposition of the inhabitants of the community. It is further alleged that plaintiffs and others similarly situated will be deprived of their property and liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and of Section 7 of Article I of the Constitution of the State of Utah. The action of the board is discriminatory, arbitrary, unreasonable and contrary to law. Plaintiffs have no plain, speedy or adequate remedy in the ordinary course of law.

The foregoing statement of facts summarizes what was set out in two causes of action. A demurrer was sustained to both of them; but counsel in argument were inclined to regard the whole petition as one cause of action. Such facts as go to the power of the Board, or want of it, to discontinue and abolish the school will be considered without regard to separate causes of action. It appears counsel and the trial court so regarded the cause presented.

If it is concluded that the Board was without the power to abolish and discontinue the school, other questions that tend to raise issues of abuse of discretion become immaterial and need not be considered.

At the same time defendant filed the demurrers to the petition an answer was filed. The demurrers to the petition were overruled. Plaintiff then filed a demurrer to defendant's answer. The demurrer to the answer was sustained.

Under the Utah law the board of education of every school district is a body corporate, having a seal conformable to its name to be used by its clerk for authentication of matters requiring it, and in the name of the board may sue and be sued, may take, hold, lease, sell and convey real and personal property as the interests of the schools may require. Revised Statutes of Utah 1933, Sec. 75-9-8.

A board of education is a legal entity created by statute. For the purpose of administering the affairs relating to schools within a designated area, certain limited powers are conferred upon boards of education. These powers are exercised for the welfare and in the interest of the people within the designated area. In Utah there are three types or classes of school districts. Two of the classes are created by the Constitution, insofar as the territorial area is designated, comprising cities of the first and of the second class. Constitution of the State of Utah, Article X, Sec. 6. The third type or class has been denominated "county school districts of the first class," Laws of Utah, 1905, Chap. 107, sometimes referred to as "consolidated school districts," and now referred to as "county school districts." "Each county shall constitute a county school district; provided, that existing county school districts shall continue as such * * * until changed as provided by law." Sec. 75-9-1, R. S. U. 1933. A procedure for making the changes in the latter case is provided by statute. The problem here involved falls under the law relating to a county school district board of education. The question is one of construction of the following section:

"Every board of education shall have power and authority to purchase and sell schoolhouse sites and improvements thereon, to construct and erect school buildings and to furnish the same, to establish, locate and maintain kindergarten schools, common schools con-

sisting of primary and grammar grades, high schools and industrial or manual training schools, to establish and support school libraries, * * * and make and enforce all needful rules and regulation for the control and management of the public schools of the district." Sec. 75-11-20, Revised Statutes of Utah, 1933.

In the case of *Beard* v. *Board of Education,* 81 Utah 51, 16 P. 2d 900, it was held that the "entire control of schools and school property within their respective districts is vested in boards of education." That declaration had no reference to a discontinuance of a school; but referred to the use of certain school property.

The Supreme Court of the United States has held that the power given the Postmaster General by Congress to establish post offices carries with it the power to discontinue such post offices. *Ware* v. *United States,* 4 Wall. 617, 71 U. S. 617, 18 L. Ed. 389.

In the case of *Beard* v. *Board of Education,* supra, ■ this court stated:

"The board of education, being a creation of the Legislature, has only such powers as are expressly conferred upon it and such implied powers as are necessary to execute and carry into effect its express powers."

See *Ogden City* v. *McLaughlin,* 5 Utah 387, 16 P. 721; *Salt Lake City* v. *Sutter,* 61 Utah 533, 216 P. 234; *Pettit* v. *Duke,* 10 Utah 311, 37 P. 568; *American Fork City* v. *Robinson,* 77 Utah 168, 292 P. 249; *Lund* v. *Salt Lake County,* 58 Utah 546, 200 P. 510.

Plaintiff asserts and defendant confesses, there is no express power given to school boards to vacate, abandon and discontinue an established school in a county school district.

Plaintiff asserts there is no implied power. Defendant maintains there is such a power.

There is in this state a series of legislative enactments relating to the powers given to boards of education to establish and maintain a uniform system of public schools.

Article X, Section 1 of the Constitution of the State of Utah grants the following powers:

"The Legislature shall provide for the establishment and maintenance of a uniform system of public schools, which shall be open to all children of the State, and be free from sectarian control."

The first Legislature after the adoption of the Constitution created the State Board of Education and the district school board and in Sec. 51, Article VI, Chapter CXXX, Laws of Utah, 1896, provided:

"It [district school board] shall organize, *maintain* and *conveniently locate* schools for the education of the children of school age within the district, or *change* or *discontinue* any of them according to law." (Italics added.)

The same wording is found in Sec. 2, Chapter 6, Chapter XLIX, Laws of Utah, 1897; in Sec. 1816, Chapter 6, Title 55, Revised Statutes of Utah, 1898; and in Sec. 1816, Chapter 6, Title 66, Compiled Laws of Utah, 1907.

By this grant of power, the Legislature made and recognized two powers, i. e., the power to "organize, maintain and conveniently locate schools" or to "change or discontinue any of them."

Contemporaneous with the power granted in Sec. 51, Article VI, Chapter CXXX, Laws of Utah, 1896, we find another power granted in Sec. 58 of the same Article VI, which reads as follows:

"When necessary for the welfare of the schools of the district, or to provide for the children therein proper school privileges, or whenever petitioned to do so by one-fourth of the resident taxpayers of the district, the board shall call a meeting of the qualified voters, as defined in Section 49, at some convenient time and place fixed by the board, to vote upon the question of the selection, purchase, exchange, or sale of a schoolhouse site, or the erection, removal, purchase, exchange or sale of a schoolhouse. The chairman of the board shall be chairman, and the clerk of the board secretary of such meeting. In case either of these officers is not present, his place shall be filled by some one chosen by the voters present. A notice, stating the time, place and purpose of such meeting shall be posted in three public

places in the district by the clerk of the district board at least twenty days prior to such meeting. If a majority of such voters present at such meeting shall by vote select a schoolhouse site, or shall be in favor of the purchase, exchange or sale of a designated schoolhouse site, or of the erection, removal or sale of a schoolhouse, as the case may be, the board shall locate, purchase, exchange or sell such site, or erect, remove or sell such schoolhouse, as the case may be, in accordance with such vote of such majority; provided, That it shall require a two-thirds vote to order the removal of a schoolhouse."

This same section is found as Sec. 1823, Chapter 6, Title 66, Compiled Laws of Utah, 1907; the same provisions relative to the election to determine a school site or building are found in Sec. 4527, Chapter 3, Title 90, Compiled Laws of Utah, 1917. The entire section was repealed by Chapter 94, Laws of Utah, 1921.

In 1905, the Legislature passed an act providing for county school districts of the first class and placing them upon the same basis of administration as school districts in cities of the second class. The act repealed all acts and parts of acts in conflict with its provisions. Chapter 107, Laws of Utah, 1905. Section 21 thereof provided, inter alia:

"The Board of Education shall have the power and authority to purchase and sell school house sites and improvements thereon; to construct and erect school buildings and to furnish the same; to establish, locate, and maintain kindergarten schools, common schools, consisting of primary and grammar grades, high schools, and industrial or manual training schools; * * * to do all things needful for the maintenance, prosperity and success of the schools, and the promotion of education; to adopt by-laws and rules for the procedure of the Board of Education, and make and enforce all needful rules and regulations for the control and management of the public schools of the district."

It will be noted that the powers are the same as those granted in section 75-11-20, R. S. U. 1933, supra. The powers granted in Sec. 21, Chapter 107, Laws of Utah 1905, were expressed in Section 1891x20, Chapter 16, Title 66, Compiled Laws of Utah, 1907. The power to "change or discontinue" any school was to be found in Sec. 1816, Chap 6,

Title 66, Compiled Laws of Utah, 1907. The provisions of Sec. 1816, supra, have failed to appear in any of the statutory enactments, compilations or revisions since the Compiled Laws of Utah, 1907. Section 1816 was expressly repealed by Chap. 78, Laws of Utah 1915, and the powers therein granted must, of necessity, have been taken away.

"The school district is a creation of the Legislature. Its powers and the method of their exercise are all defined by legislative act. In like manner the powers and duties of its officers are defined. Such officers have no powers except such as are conferred by legislative act. * * * If the Legislature was within its authority in conferring such power upon school officers, it necessarily had the same authority to enlarge or to abridge the same." *Bopp* v. *Clark,* 165 Iowa 697, 147 N. W. 172, 173, 52 L. R. A., N. S., 493, Ann. Cas. 1916E, 417.

We have heretofore quoted the statutes that vested powers in the Board of Education of county school districts to "change or discontinue" and shown that this provision or grant of power was later taken away. There is no express power to abandon, disestablish or discontinue ■ a school in a county school district. The blanket provision that it "may do all things needful for the maintenance, prosperity and success of the schools and the promotion of education" does not enlarge the powers specifically conferred.

"It is a well established rule of construction that where a statute grants a power or right the powers not mentioned in ■ the enumeration are intended to be excluded. Suth. St. Const. Sec. 325."

This statement of the law was quoted by this court with approval in the case of *Pettit* v. *Duke,* supra. A power once granted by the legislature and then withdrawn, does not leave the matter of invoking the principle of im- ■ plied powers open for consideration. *In re Phillips' Estate,* 193 Wash. 194, 74 P. 2d 1015; *Ogden City* v. *Gilbert F. Boreman,* 20 Utah 98, 57 P. 843.

The legislature has not amended the law to vest boards of education with the power to "change and discontinue"

but has expressly withdrawn such powers after the power was once given. We find nothing in the statutes showing the legislature had the intention to vest in the boards of education or the successors of the boards of trustees the power vested in the old boards of trustees, i. e., to change or discontinue schools in county school districts.

A school is something more than a plot of ground, a site for a building, or both. A school is an operating institution for the welfare of the community it serves.

The cases cited from other jurisdictions are based upon other statutes and are only illustrative of what has been done under those statutes.

Judgment affirmed. Costs to respondent.

LARSON and PRATT, JJ., concur.

McDONOUGH, Justice (dissenting).

I dissent. The original petition in the district court for writs of prohibition and mandamus against the school board set out two causes of action: (1) That the Board of Education of Emery County School District had no power or authority to discontinue and abandon the school located at Elmo, Utah; and (2) that even though said school board had such authority to discontinue said school, nevertheless in so doing it was acting arbitrarily and in abuse of its authority.

General demurrers to the above causes of action were overruled, whereupon the school board filed an answer to the petition and each cause of action set out therein. Said answer alleged facts and conditions justifying their proposed action of discontinuing the Elmo school and transporting the school children to Cleveland—some four miles from Elmo—to attend schools there.

A general demurrer to the answer to each cause of action was sustained, and upon refusal of the defendants to plead further, judgment was rendered against them directing that

a peremptory writ of mandamus issue directing the school board to continue the Elmo school and take such steps as would be necessary to insure its proper maintenance.

This appeal raises first the issue of whether the school board has any statutory authority to abandon or discontinue any school and provide in lieu thereof educational facilities elsewhere. The court's opinion reaches the conclusion that the board had no such power. It is conceded that unless such authority is expressly or by implication granted by statute none such exists. In *Beard* v. *Board of Education of North Summit School District,* 81 Utah 51, 16 P. 2d 900, 903, we said:

"The powers of the board of education are statutory since the Legislature may authorize the governing authorities of school districts as the state's agents to do anything not prohibited by the Constitution. *Young* v. *Board of Trustees,* supra [90 Mont. 576, 4 P. 2d 725]. The board of education, being a creation of the Legislature, has only such powers as are expressly confered upon it and such implied powers as are necessary to execute and carry into effect its express powers. *Royse Independent School District* v. *Reinhardt* (Tex. Civ. App.) 159 S. W. 1010. The court is not concerned with the policy, expediency, wisdom, or justice of a legislative enactment conferring powers on boards of education of school district, and where such authorities act within their powers, in the absence of a clear abuse, the courts will sustain the exercise of such power. *Young* v. *Board of Trustees,* supra."

In harmony with the last part of the above quotation, if it be determined that a school board does have authority to abandon or discontinue a school, its action in so doing will not be interfered with unless there is a "clear abuse" of discretion. In the present case, if it be resolved that the defendant school board has authority under the statute to discontinue a school, the cause should be remanded with instructions to proceed to determine under the issues raised whether in exercising such authority it has abused its discretion.

County school districts of the first class, to which category appellant school board belongs, were first created by

statute in 1905 (see Laws of Utah 1905, Chapter 107). At that time there were already in existence school districts and school districts of cities of the first and second class (see Constitution of Utah, Article 10, Sections 1 and 6; Laws of Utah, 1896, Chap. CXXX, Articles IV, VI, XV; Laws of Utah 1897, Chapter XLIX, Chapters 4, 6, and 13). Prior to the time Utah became a state there were in existence what were termed "school districts" or "district Schools" (see Comp. Laws of Utah 1876, Chapter II; Revised Statutes of Utah 1888, vol. 2, Chapter VI).

But it was with the adoption of the State Constitution and act of the legislature in 1896 that provision was made for two different types of school districts, namly: common school districts and school districts of cities of the first and second class (see Constitution and statutes above referred to). The powers of the trustees of the school districts and those of boards of education of the city school districts were separately set out. As contained in Revised Statutes of Utah 1898, Title 55, Chapter 6, the powers of the trustees of a common school district were specifically enumerated. For instance: Sec. 1815. Power of "general control" of property and to levy "annual and special tax;" Section 1816, "To maintain, locate, or discontinue schools;" Sec. 1817, "To make repairs, furnish supplies"; Section 1818, 'To furnish text books, furniture"; Section 1819, "To employ teachers" and dismiss the same; and so on until all its powers are set forth.

With respect to boards of education of school districts in cities of the first and second class, however, the legislature set forth their powers in more general terms. Section 1913, Chap. 15, Title 55, Revised Statutes of Utah 1898, provided:

"The board of education shall have power and authority to purchase or sell schoolhouse sites and improvements thereon; to construct and erect school buildings and furnish the same; to establish, locate, and maintain kindergarten schools, common schools consisting of primary and grammar grades, high schools, and industrial or manual training schools; to establish and support school libraries; to purchase, exchange, repair, and improve the high school apparatus, books,

furniture, fixtures, and all other school supplies, in said schools; to supply and loan to pupils in the several grades and departments of said schools, free of charge, all text books and supplies used by the pupils of said schools; to sell to pupils in the several grades and departments of said schools, at cost, all text books and supplies used by the pupils of said schools; * * * to do all things needful for the maintenance, prosperity, and success of the schools, and the promotion of education; to adopt by-laws and rules for the procedure of the board of education, and make and enforce all needful rules and regulations for the control and management of the public schools of the city."

Then, as heretofore stated, the legislature in 1905 made provision for the creation of what was called "county school districts of the first class" (see Laws of Utah 1905, Chapter 107). These school districts were to be created in counties where the school population of the "district schools" in such county was in excess of 3,000. The act provided that "said county school district of the first class is hereby placed upon the same basis as school districts in cities of the second class under the laws of this State, except as herein otherwise provided."

The powers of the boards of education of the newly created school districts and those quoted above governing school districts in cities of the first and second class were practically identical. They are enumerated in Sec. 21, Chap. 107, Laws of Utah 1905 (quoted in the court's opinion).

The powers so conferred on trustees of school districts and those conferred on boards of education in county school districts of the first class and school districts in cities of the first and second class continued in the statutes until 1915 (see Title 66, Chap. 6, Sec. 1816; Chap. 16, Sec. 1891-x20; and Chap. 17, Sec. 1913, Comp. Laws of Utah 1907). At that time the legislature passed an act which repealed all statutory provisions relative to trustees of school districts and to the school districts of which said trustees had charge, and so amended the school law as to make every county a county school district of the first class, except where such districts of the first class were already in exis-

tence within a county. As to these, they remained as they were and the remaining portion, if any, of the county became an additional school district of the first class (see Chapter 78, Laws of Utah 1915). The effect of the repealing provisions of the chapter was to do away with the system or type of school administration theretofore existing throughout that portion of the state not theretofore included in county school districts of the first class or in cities of the first and second class. The other provisions thereof made applicable to the entire state outside of cities of the classes mentioned the school law relative to county school districts of the first class.

It was thus that Section 1816, Comp. Laws of Utah 1907, granting specifically to trustees of school districts the power to discontinue schools was taken off the statute books (as were all other provisions relating to such districts), since such school districts were no longer in existence. But at the same time nothing was done to affect the powers of boards of education in county school districts of the first class and school districts in cities of the first and second class. The powers governing these boards remained the same in so far as the question before us is concerned. Subsequently, the term "county school district of the first class" was changed to read "county school district"; and the laws governing such school districts were merged with the laws governing school districts in cities of the first and second class. The statute enumerating the powers of the boards of education of such districts now appears as Sec. 75-11-20, R. S. U. 1933.

From the foregoing discussion of the background of the statute it seems clear that the problem, confronting this court is whether the statute, hereinbefore set out, originally conferring powers on boards of education of school districts in cities of the first and second class grants the power to discontinue or abandon any school within such district— since the same statutory provision was subsequently made applicable to county school districts of the first class, now

termed county school districts. In this view of the matter it becomes immaterial that the legislature abolished common school districts and repealed the provision expressly granting trustees of such districts the power to discontinue schools. Such provision never was applicable to the type of school district here concerned. If appellant school board has the power to discontinue the school at Elmo, it does so because the statute, originally passed in 1896 with reference to school districts in cities of the first and second class, and as later (in 1905) applied to county school districts of the first class, granted to the boards of education of such districts the power to discontinue schools within such districts.

That the statute did confer the power on school boards to discontinue schools within their respective districts is, I think, clear. As hereinabove stated, the law is somewhat general in its terms. But it does specifically provide that the board of education shall have "power and authority" to purchase and sell schoolhouse sites and improvements thereon;" "to establish and maintain" schools and libraries; and "to do all things needful for the maintenance, prosperity and success of the schools, and *the promotion of education.*" (Italics added.) This last quoted power was never conferred on trustees of school districts. Instead, their powers were, as stated, more specifically enumerated and included the express power to discontinue schools. I see no basis in reason why the legislature should confer the power to discontinue schools on trustees of a school district and not on the board of education of a city school district. Nor do I see why the language "do all things needful for the maintenance, prosperity and success of the schools, and the promotion of education" does not include the power to discontinue a school where to do so would further the cause of education or the prosperity and success of the schools. In my opinion, the statute in question vests broader powers in school boards of cities and county school districts of the first class than the expressly enumerated powers conferred on the now abolished trustees of school districts.

If there exists no power in a board of education of a county school district to discontinue a school, then neither is such power vested in the board of a city school. Each school district is a unit, just as each city of the first and second class is a unit. If the power to "do all things needful for the maintenance, prosperity and success of the schools, and the promotion of education" does not include the discontinuance of a school at Elmo, while providing an adequate school and school facilities a few miles away, then neither may the board of a city school district discontinue a school in one part of the city and offer in lieu thereof better facilities a few blocks away.

It is unreasonable to suppose that the legislature would grant to the old trustees of school districts the power—specifically given—to discontinue schools, though the discontinuance of such school might require miles of travel over very poor roads; and yet withhold from city school boards the power to discontinue a school while providing another some city blocks away.

To me it seems clear that the reason no specific grant of authority to discontinue a school was given to city boards of education was that such authority was contained in the comprehensive grant of power referred to heretofore. In each school district—whether city, district, or county district of the first class—the governing board had the power, under the provisions of the statute applicable thereto, to establish and maintain a school anywhere within such district if circumstances justified doing so. Likewise, where within such district the school population or other circumstances became such that to continue to maintain a school there would be against the best interest of education in that district, and it was possible to provide adequate educational opportunities elsewhere within said district and accessible to those going to the school it was proposed to discontinue, it was within the powers granted to either school board or trustees to discontinue such school.

The lower court, therefore, improperly sustained the general demurrers to the answers of appellants. The cause

should be remanded with directions to proceed to determine the issue of whether under the evidence the school board is acting arbitrarily or capriciously in abuse of its discretion in discontinuing the school at Elmo, Utah.

WOLFE, Justice (dissenting).

I concur in the views expressed by Mr. Justice McDONOUGH in his dissenting opinion.