Common Pleas Court of Putnam County.

MARY FRANCES FELTER v. BANK OF LEIPSIC CO.

Decided December 6, 1933.

*Otto W. Hess,* for plaintiff.
*Gilbert Bettman, Albert H. Straman,* and *Raymond S. Powers,* for defendant.

COPELAND, J.

This case was submitted to the court on the oral statements of counsel. There is no dispute as to the facts.

It is an action in which plaintiff seeks to recover from defendant on three certificates of deposit, aggregating $11,-359.48, which certificates of deposit the defendant admits having issued to plaintiff. The certificates of deposit were issued during the years 1930 and 1931. The Bank of Leipsic Company was turned over to the superintendent of banks for liquidation on January 14, 1932, and under an

order duly entered by the Common Pleas Court of Putnam county, Ohio, in case No. 14575, entitled: "In the Matter of the Bank of Leipsic Company, of Leipsic, Ohio," said bank resumed business on October 12, 1932. Defendant refused payment as being in violation of said order duly entered in said cause No. 14575.

It was agreed that the opening of the bank on October 12, 1932, was effected under the provisions of Section 710-89, General Code. That under and by virtue of the authority conferred upon the Common Pleas Court by said Section 710-89, General Code, upon application and with the approval of the superindent of banks, and with the consent of 93% of the depositors, and 99% of the shareholders, after due notice to non-consenting depositors and shareholders to show cause why such application should not be granted, and after a full hearing on such application, and the protests filed therein, including plaintiff's protest, the application to resume operation was granted, without plaintiff's consent. A motion for new trial in which plaintiff did not join, was overruled, and no error proceedings were filed or appeal taken.

Plaintiff predicates her action upon the principle of debtor and creditor, and claims that under the Constitutions of both the state of Ohio and of the United States, her contractual rights are fixed, and that no authority is given under said Section 710-89, General Code, to vitiate or impair the obligations of her written contracts.

Section 10, Article I of the Constitution of the United States, provides:

"No state shall * * * pass any law impairing the obligation of contracts."

Section 28 of the Constitution of the state of Ohio, provides:

"The General Assembly shall have no power to pass * * * laws impairing the obligation of contracts."

The defendant claims that its liability to plaintiff is limited to the terms and conditions contained in the decree and order made in said cause No. 14575, under the authority given in said Section 710-89, General Code, and that

plaintiff is legally bound by the same as though she had consented to the plan under. which defendant opened and resumed business.

Section 710-89, General Code, provides in part as follows:

"Such bank may with the consent of the superintendent of banks, resume business upon such conditions as may be approved by the Court of Common Pleas in and for the county in which such bank is located."

The question presented is an important one, and will remain a subject of doubt until the Supreme Court has interpreted .the provisions of said Section 710-89, General Code, in the light of the Constitutional provisions under which plaintiff seeks to recover.

(Off the record: The court has heard that the banking department of the state of Ohio, is hoping that some Judge of the Common Pleas Court will be foolish enough to decide adversely to the provisions of said Section 710-89, General Code, so that the matter may reach the Supreme Court for a definite and final decision.)

The provisions of the Constitutions are fundamental, and need no comment. The important question is, do the provisions of said Section 710-89, General Code, and the procedure prescribed therein for banks resuming business, admittedly regular as in the instant case, impair plaintiff's written contracts with defendant, in contravention of the provisions of the Constitutions of the state of Ohio, and of the United States.

It goes without saying, and it is not denied, that Courts of Common Pleas all over Ohio, have recognized the efficacy of the provisions of said Section 710-89; and that banks without number `have resumed business under conditions approved by. the Court of Common Pleas, with the consent and recommendation of the superintendent of banks, and a majority of the depositors and shareholders of such banks, and in many cases, with a much smaller majority than in the instant case. *And so far as this court knows no error proceedings have been filed, or appeal taken,* except in one case now pending in Akron, Ohio. This fact of itself is very significant and is entitled to serious consideration by this court.

Plaintiff complains that she has had no "day in court" and that her rights have been impaired "without due process of law."

Plaintiff was a party to the proceedings in said case No. 14575. She received notice, filed an answer or protest, and was heard, but she filed no motion for new trial, no error proceedings were taken by her, and no appeal filed. And she now says, in effect, that it was none of her business, that it was the court's business.

With this the court does not agree. She had her day in court and whether she was served with process or not is immaterial; the fact remains, she was in court and participated in its proceedings, and the same question she raises now she could have raised then.

Certainly the doctrine of *res judicata* applies. This doctrine rests upon the ground that the party to be affected has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction and should not be permitted again to harass and vex his opponent in a second action involving the same matter. Neither expediency, nor public policy, nor natural justice favor a multiplicity of suits. Litigation should not be interminable.

There is another reason why plaintiff cannot complain that she has not had her day in court. In his capacity as a liquidating officer, the duties and actions of the superintendent of banks, are very similar to those of an assignee or receiver. He represents *all* the depositors and *his* acts are *their* acts when it comes to conserving the assets of the bank. He represented *them* and was acting for *their* benefit. He might have pursued any one of many plans as such liquidating officer. Had the Bank of Leipsic Company made an assignment for the benefit of its creditors, or been placed in the hands of a receiver, plaintiff would have had to acquiesce, and would have had to admit that her contracts were impaired, in spite of the Constitutions. And had the superintendent of banks, closed out the Bank of Leipsic Company, by sale or by the slow process of collection and distribution, or by any other method provided by law, plaintiff would have an impaired contract whether she liked it or not. In principle the court can see no difference,

except that under the provisions of said Section 710-89, plaintiff is afforded an added measure of protection. Certainly it is a wise provision of our statutory law to leave some designated public official (in this case the Court of Common Pleas) free to act within the scope of his authority, to protect depositors, shareholders and the public as the needs and justice of the particular case demands.

Plaintiff may not realize on her contracts 100%, but this court does not believe that plaintiff's contracts have been impaired, in the sense as provided in the Constitutions. She still has her contracts. And the bank still has the same assets. The assets are still extant—they are all there. Plaintiff has lost nothing, but the restriction of payment, and that she lost because of depreciated values or bad loans. If plaintiff's contracts were impaired, they were impaired on January 14, 1932, when the bank, a dying financial institution gasping for breath, was taken over by the superintendent of banks for liquidation, and not when it resumed business on October 12, 1932, after having, at least, some life pumped into it. Plaintiff would have the court believe that the Bank of Leipsic was taken over by the superintendent of banks of Ohio for the purpose of resuming business, whereas, in truth and fact, it was taken over to conserve the assets for the depositors. The resumption of business was an afterthought. The plan approved by the Court of Common Pleas was approved with the hope of restoring her contracts, already broken and impaired, that they may have new life, and be saved from complete ruin.

Another thing of vital importance to remember is the fact that the statute of which plaintiff complains, was in full force and effect at the time plaintiff entered into her contracts. It must be conceded, that when a contract is entered into, a statute in existence and in force at the time dealing with the subject matter, is regarded as a part of the contract in that it is presumed that the parties had such statute in contemplation when the contract was made. It is not questioned but what Section 710-89, General Code, was in effect when the certificates of deposit sued on were issued and the relation of debtor and creditor created. Plaintiff's status as a creditor was subject to be affected by action under said section. And when this section was

brought into play at the instance of the bank, then it was that plaintiff's contracts became impaired. Her debtor had become insolvent, and could no longer pay 100% on her contracts.

Upon agreement of 93% of the depositors and 99% of the shareholders, and with the approval of the superintendent of banks and the Court of Common Pleas, the bank was granted permission to resume business upon a plan deemed by the court for the good of all. This is certainly a lawful exercise of the police power of the state. A bank is a creature of the state, and its right to exist as a corporation rests with the state. And implied is the condition that the corporation shall be subject to such reasonable regulation in respect to its affairs as the legislature may from time to time prescribe, and no one can gainsay that the order of the Court of Common Pleas entered in said cause No. 14575 was reasonable, sound and fair. That being true, we hold that there is no immunity of a depositor from reasonable regulations made to safeguard the public interest. The operation of a bank is most certainly affected with a public interest and related to general prosperity. Public convenience and general prosperity may have influenced the court in its action, and if so, who can say aught against it, so long as such order is reasonable, sound and fair. The presumption is that the reopening of the bank will be for the benefit of all.

We therefore hold that the action taken by the Court of Common Pleas in said cause No. 14575, was not violative of any of plaintiff's rights. So holding plaintiff's petition is dismissed at her costs. If plaintiff files a motion for new trial, it may be overruled, and exceptions saved, and judgment given to defendant "no cause of action."

Court citations followed are:

Section 710-89, General Code of Ohio.

*Floyd Chilton, et al* v. *The George D. Harter Bank* (Stark county, unreported).

*In the Matter of The Liquidation of the Bank of Leipsic* No. 14575 Putnam county, (unreported).

*Pierce Oil Co.* v. *Phoenix Refining Co.*, 42 Supreme Court Reporter, page 440; *In Re: Farmer's Exchange Bank*, 225 North Western, page 307; *Dravo-Doyle Co.* v. *Orrville*, 93

Ohio State, page 236; *State, ex rel* v. *Savings Co.*, 110 Ohio State, pages 320, 331. 23 Ohio Jur. 961, Sections 730 *et seq.* 23 Ohio Jur. page 1135, Sections 983 *et seq.* 45 Harvard Law Review, 697, 702.

Numerous unreported decisions of the Common Pleas Courts of Ohio.

Numerous decisions of other states upholding a statute similar to Section 710-89, General Code.