**CITY TRUST & SAVINGS BANK OF YOUNGSTOWN, Liquidation of, In Re**

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 12, 1934

G. Bettman, Attorney General, Columbus, and McKain, Ohl & Swanner, Youngstown, for City Trust & Savings Bank.

John K. Harrison, Youngstown, for depositors.

FUNK, J, (9th Dist) sitting by designation.

## OPINION

By POLLOCK, J.

The power of the Superintendent of Banks to take over a failing banking institution under the laws of this state is provided by §710-89 GC. The last paragraph of this section provides for the resumption of business by the bank, which reads as follows: ·

"Such bank may, with the consent of the Superintendent of Banks, resume business upon such conditions as may be approved by the ·Court of Common Pleas in and for the county in which such bank is located."

It is urged that to construe this paragraph any broader or ·give ·any further rights to the bank to resume business than upon the same terms and conditions as to the depositors that were in the bank at the time that it was taken over would render the paragraph unconstitutional; in other words, that the depositor must have the same right to withdraw his deposit that he had under the original deposit contract, and that to permit the bank to reopen under the plan proposed, and which was approved by the Court of Common Pleas, would render the paragraph unconstitutional.

The question of the control that the state can prescribe through its legislature upon the power and authority of its banks or-

ganized under state law, has been before the courts of this country many times. The Supreme Court of the United States, in the case of Noble State Bank v Haskell, 219 U. S., 111, said:

"It may be said in a general way that the police power extends to all the great public needs."

On page 113 the court further said:
"We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the state in taking the whole business of banking under its control. On the contrary, we are of the opinion that it may go on from regulation to prohibition except upon such conditions as it may prescribe. In short, when the Oklahoma legislature declares by implication that free banking is a public danger, and that incorporation, inspection and the above described co-operation are necessary safeguards, this court certainly cannot say that it is wrong."

The Supreme Court of Minnesota said, in Hoff v First State Bank, 218 NW, 240:
"When a business is affected with a public interest, it ceases to be exclusively private, and becomes subject to regulation by law in the interest of public welfare. * * * So the business of banking is clearly affected with a public interest, and subject to reasonable statutory regulations. Noble State Bank v Haskell, supra; State v Richcreck, 167 Ind., 217; 77 NE 1085; 5 L.R.A. (N.S.) 874, 119 Am. St. Rep. 491, 10 Ann. Cas., 899; Blaker v Hood, 53 Kan. 499, 36 P. 1115, 24 L.R.A., 854; Weed v Bergh, 141 Wis., 569, 124 NW 664. That this power of regulation is usually rested on the police power of the state does not seem important. The power to regulate flows from the facts that the business is affected with a vital public interest, and that public welfare justifies and requires regulation and restriction thereof."

The same question was before the Supreme Court of Florida in the case of McConville v First Pierce Bank & Trust Company, 135 So., 395.

Thompson on Corporations seems to sum up the holdings of the different states on similar questions as to the power of the legislature to take charge of and control banks, as follows:

"Perhaps no class of corporations are more completely under police regulations of the states than banking companies. The police power, in its visitorial aspect, as exercised by congress and the several states, extends to the minutest details of the banking business. These corporations are not, strictly speaking, quasi-public in their nature; but they are of such a character that the state can and does protect the public by any and all reasonable regulations necessary to that end."

We might also refer to the fact that three Courts of Common Pleas in this state have held this paragraph of §710-89 GC constitutional, as follows:
**Felter v Bank of Leipsic Company, Ohio Law Bulletin, Dec. 25, 1933, p. 241 (CP 15 Abs 412);**
**In re Citizens Savings Bank of Pemberton, 30 N.P. (N.S.), 291;**
Floyd Gilton v George D. Harter Bank, unreported case, opinion by Wilkin, J.

We think that this paragraph which provides that the Court of Common Pleas may permit the bank to resume business upon such conditions as may be approved by it, is constitutional, and that the court can impose conditions on the former deposits, limiting the withdrawal thereof, to a greater extent than those upon which they were deposited.

It is further urged that to place such a construction would not only be a violation of and exceed the power of the state over its banking corporations, but also it would be a direct violation of the contract between the parties, namely, the bank and the depositor. We think that under the authorities cited the state had a right, through its legislature, to make such provision, but in addition to that the contract between the bank and the depositor was not violated on the permission by the court to the bank to resume business. This contract was violated or broken when the bank became in such a condition that it could not pay its depositors as it had agreed to do, and the Superintendent of Banks, in taking over the assets of this bank, took these assets over in trust for the equal benefit of all depositors, because the bank itself was not able to perform its contract. So that there was no contract existing between the depositor and the Superintendent of Banks, or rather the trust fund at the time the Common Pleas Court made the order, the assets of this bank were then under the power of the court and it could make any such order in regard thereto as would be for the benefit of the depositors, and we might also say for the public generally, for the reason that although a banking corporation may not be,

strictly speaking, a quasi-public institution, it does partake of such a nature that the state can and does protect the public, as well as the depositors, by any and all reasonable regulations necessary to that end.

In addition to this, this statute was passed before the deposits of the complaining depositors were made. It was then an existing law, not only controlling banks, but controlling depositors and others who dealt with the bank in a like manner, as though it was written in the contract between the depositors and the bank. **Palmer et v Tingle, 55 Oh St, 423; City of Cleveland v Construction Co., 67 Oh St, 222; State ex Crabbe v Massilon Sav. & Loan Co., 110 Oh St 320, 328, 329.**

It is further urged that this plan exceeded the power of the court to approve, because the depositor was required to accept a new debtor to the amount of 35% of his deposit. While it is true that the depositor must look to this new corporation for the payment of the 35%, yet it was not creating a new debtor. It was only the way provided by this plan for the preservation and collection of slow assets and taking care of any other assets that may have developed into slow assets which were retained by the company itself for the purpose of working out and providing a way for the depositors in the end to be paid or secured their 35%, or as much thereof as these assets would pay.

It is further urged that the provision in the plan for the payment of 65% in the judgment of the Board of Directors is turning these funds over to the discretion of the Board of Directors, and that they need not pay them out, only as they might direct. The Superintendent of Banks would have the same power over this corporation after it was re-opened that it had before. If the Board of Directors were abusing its discretion, the Superintendent of Banks could take the necessary steps to compel a proper performance of the condition, and we also think that any depositor, under such circumstances, could appeal to the courts.

It is further urged that there was no evidence introduced before the Common Pleas Court upon which that court could base its judgment, and that the plan was unfair. We think there was evidence before the court upon which the court could base its judgment. It was evident that this banking institution at the time it was taken over by the Superintendent of Banks was not solvent. The plan provided that there should be $500,000 of new capital placed in this bank and it had been approved by the Superintendent of Banks and by the Reconstruction Finance Corporation, in granting its loan, both, as the Court of Common Pleas announced. We think the court had a right to rely on these matters, with others that were in evidence, in reaching a conclusion, and if the objecting depositors had other testimony, they could have introduced that testimony before the Common Pleas Court, showing otherwise. The mere fact that the Superintendent of Banks, who had possession of the assets of this bank, approved and consented to the plan of re-opening, would, as we think, if there was any burden upon either party, cast a burden upon the objecting depositors that the plan was not fair or just. The presumption arises, from the consent of the Superintendent, that he was acting within the discretion granted him under this section when he gave his consent, and the presumption is that such an official's action would be correct.

It is further urged that there is no law in this state by which the majority of the stockholders and depositors can force their approval upon the minority. This is correct. We do not have such a statute, or did not at the time this bank was taken over by the Superintendent, and we do not think anyone claims such authority in this case, but the approval of the large percentage of both depositors and stockholders, the parties who had direct financial interest in this bank, was a matter that the Superintendent of Banks, in giving his consent and the Court of Common Pleas, in approving it, had a right to take into consideration.

Our attention has been called to the case of **Burgoon v Citizens Savings Bank Company, in the January 13th, 1934 Law Bulletin, (15 Abs 452)**, a case decided by the Court of Appeals of Lucas County, in which that court announced the proposition that a majority of the depositors consenting to the re-opening of the bank does not bind the minority and deprives it of no right, constitutional or otherwise, by the resumption of business, although it does not consent thereto. The opinion in this case does not set out distinctly just what was before the court, but if we can understand the facts in the case, the question arose in such way that the depositor who did not approve of the plan would not have equal protection or rights with those who did, in the re-opening of the bank, and we think, as we understand the facts in the case, that the holding of that court does not affect a plan such as we have where all depositors

were to be treated alike, whether they consented to the plan or objected.

The judgment of the court below is affirmed. Exceptions noted.

Judgment affirmed.

ROBERTS and FUNK, JJ, concur.